JOHN F. MURPHY's (dependent's) CASE.

Hampden. September 20, 1951. — January 11, 1952.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Proximate Cause. Evidence,* Opinion: expert.

Causal relation between a coronary thrombosis and subsequent death from cancer was a proper subject of expert medical testimony.

Expert medical testimony in a workmen's compensation case warranted findings that a personal injury through a coronary thrombosis suffered by the employee while at work so weakened his condition that his death from cancer about nineteen months later occurred sooner than it otherwise would have, and that such personal injury was a proximate cause of his death.

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the workmen's compensation act.

The case was heard by *Fairhurst*, J.

*H. A. Moran, Jr.*, (*E. Burke* with him,) for the claimant.

*F. S. Pillsbury*, for the self insurer.

WILLIAMS, J.   This is an appeal by Anna Murphy from a decree of the Superior Court awarding compensation for injuries received on March 7, 1947, by her deceased husband, John F. Murphy, while employed by Railway Express Agency, Inc., a self insurer.   Murphy suffered a coronary thrombosis as a result of lifting a heavy package in the office of his employer at Holyoke.   It is not now disputed by the employer that this was a personal injury within the meaning of the workmen's compensation act which arose out of and in the course of the employment and which resulted in total incapacity for work.   The employee filed a claim for compensation on March 1, 1948, but died on the following October 6, before there was a hearing on his claim by the Industrial Accident Board.   On November 8, 1948, his widow, the present appellant, filed a claim for dependency compensation alleging that her husband's death resulted from the injury of March 7, 1947.   After a hearing at which both claims were considered, a single member of the board awarded compensation to the widow in the amount of $3,008.57, the compensation being computed to January 9, 1951, the date of his decision, and directed payment of $250 under G. L. (Ter. Ed.) c. 152, § 65N, into the special fund of the State treasury, $250 under § 33 to the widow, and $50 under § 9A to Dr. Charles J. Downey, a physician who testified for the claimant.

The reviewing board affirmed and adopted the findings and decision of the single member, but increased the award of compensation to the widow to $3,135 in order to bring the computation up to March 3, 1951, and assessed costs of $60 against the self insurer under G. L. (Ter. Ed.) c. 152, § 10, as appearing in St. 1947, c. 546.   Upon certification of the record to the Superior Court the judge "adjudged" that

the employee's death did not result from the personal injury of March 7, 1947, and decreed that the widow be allowed compensation based on the total incapacity of the employee from March 7, 1947, until the date of his death, with additional dependency compensation of $2.50 weekly, the total amount being $2,262.86. $50 was awarded to Dr. Downey.

The only issue raised by the appeal is whether there was error in refusing to order payment of compensation to the widow for the death of her husband and specific amounts to the Treasurer of the Commonwealth under § 65N and to the widow for burial expenses under § 33.

The single member found that the immediate causes of death were, as stated in the death certificate, carcinoma and uremia, and that a "diagnosis of far advanced carcinoma of the bladder was made in June, 1948, while the employee was still totally incapacitated for work due to the coronary thrombosis he suffered on March 7, 1947." He stated, "I accept and adopt the testimony of Dr. Charles J. Downey, physician and surgeon, and find that the decedent's 'semi-invalid condition (due to the coronary thrombosis) lowered his resistance so that death occurred (due to cancer) before it otherwise would have.' I also accept and adopt Dr. Downey's testimony that the decedent's 'weakened condition, which was due to thrombosis . . . shortened his days.' That is to say, he did not live as long after detection of the cancer, suffering from the residuals of his coronary thrombosis, as any person, normal and healthy except for such cancer."

The proof of a causal connection between the employee's thrombosis and his subsequent death depended on the testimony of Dr. Downey. It was a matter concerning which the single member and the board could not rely on common knowledge and their experience, but one upon which the aid of expert testimony was required to guide them. *Vartanian* v. *Berman*, 311 Mass. 249, 253. See *Bouffard* v. *Canby*, 292 Mass. 305, 309–310; *Tallon* v. *Spellman*, 302 Mass. 179, 183. Dr. Downey was a medical expert called as a witness by the claimant. He had never seen or treated

the decedent and his testimony was given in response to hypothetical questions propounded by the claimant's attorney. He was asked: "assume that a few months prior to October 6, namely, July, 1948, this employee was afflicted with a bladder condition and was hospitalized; that he was catheterized and given morphine for pain; that he died on October 6, 1948; that the cause of death was given as carcinoma of bladder, metastasis and uremia . . . have you an opinion as to whether the coronary thrombosis of March 7, 1947, would have resulted in the man's death on October 6, 1948?" The witness answered: "my opinion is that the carcinoma would be fatal in any event, that was certain death, but from the time the diagnosis was made of his chest complaint to the time of his death was an unusually short period of time for that type of cancer to terminate fatally — it is my opinion that his semi-invalid condition lowered his resistance so that the death occurred before it otherwise would have." On cross-examination the witness testified that, while the heart condition was in no way the cause of his death, the malignant disease attacked a man in a weakened condition and the termination was quicker than otherwise; and that a man in a weakened physical condition cannot stand any disease, including carcinoma, as can a normal person.

It is contended by the insurer that, in the absence of knowledge on the part of the doctor as to the location of the cancer in the bladder and the extent of its development at the time of diagnosis, the doctor was in no position to give a reasoned opinion as to the rapidity of its progress. It is not for us to determine whether the opinion of the doctor was medically sound. We think that it was not so contrary to common sense or so clearly based upon conjecture that it could have been disregarded. See *Ruschetti's Case*, 299 Mass. 426, 430–431. Its probative value was for the fact finding tribunal to decide. Reliance was placed upon it by both the individual member and the reviewing board. It was sufficient to warrant the conclusion that the personal injury of the employee contributed to his death. *Wiemert*

v. *Boston Elevated Railway,* 216 Mass. 598, 603. *Madden's Case,* 222 Mass. 487, 496. *Glennon's Case,* 236 Mass. 542, 543. *Edwards* v. *Warwick,* 317 Mass. 573, 577–578. *Coburn* v. *Moore,* 320 Mass. 116, 123. See *Larson* v. *Boston Elevated Railway,* 212 Mass. 262; *Wallace* v. *Ludwig,* 292 Mass. 251. The decree of the Superior Court must be reversed and a decree entered in accordance with the award of the board. Costs under G. L. (Ter. Ed.) c. 152, § 11A, inserted by St. 1945, c. 444, shall be allowed by the single justice.

*So ordered.*