JOHN LONG'S CASE.

Hampden.    April 9, 1958. — May 8, 1958.

Present: WILKINS, C.J., RONAN, SPALDING, WHITTEMORE, & CUTTER, JJ.

*Workmen's Compensation Act*, What constitutes injury, What insurer
liable. *Proximate Cause.*

Evidence in a workmen's compensation case respecting an employee who
sustained an injury to his elbow and suffered pain and had three periods
of disability during the ensuing year, whereupon, while at work on an
August 16 handling furniture, he suffered pain of great severity fol-
lowed by a fourth period of disability and an operation to relieve his
condition warranted findings by the Industrial Accident Board that
on August 16 he suffered an "injury" and that it was "at least to a
slight extent the contributing cause of the [fourth] disability," not-
withstanding that the one physician who was a witness testified to the
effect that the employee's basic condition had remained the same since
his original injury and that the incident of August 16 was only an
"exacerbation" of the "symptoms" of the original injury and not a
new injury; and upon such findings by the board a decree ordering
the compensation for the fourth disability to be paid by the insurer
covering the risk on August 16 was proper.

CERTIFICATION to the Superior Court of a decision by the
Industrial Accident Board under the workmen's compensa-
tion act awarding the employee compensation sought by
him from August 17, 1955, to be paid by Phoenix Indem-
nity Company.

A decree was entered by *O'Brien*, J., in accordance with
the board's decision. Phoenix Indemnity Company appealed.

*Thomas L. Goggin,* for Phoenix Indemnity Company.

*Raphael B. Hartley,* for United States Fidelity and Guar-
anty Company.

*Milton J. Donovan,* for American Mutual Liability In-
surance Company.

*John M. Fitzgerald,* for the claimant, was not called on.

WHITTEMORE, J. The employee was disabled on four oc-
casions and three successive insurers are involved. Phoenix
Indemnity Company was the insurer on August 16, 1955,
the date of the last disability. Phoenix has appealed from

the decree of the Superior Court ordering it to pay disability compensation and dependency benefits. Phoenix contends that there was no basis in the evidence for the finding of the single member, affirmed and adopted by the reviewing board, that there was an injury on August 16, 1955, which was "at least to a slight extent the contributing cause of the disability which immediately followed this injury." It contends that there was no evidence that anything which occurred on August 16 "bears a causal relation to the disability" and that therefore it is not liable under the rule "that where there are several successive insurers, chargeability for the whole compensation rests upon the one covering the risk at the time of the most recent injury that bears a causal relation to the disability." *Tassone's Case*, 330 Mass. 545, 547. *McConolouge's Case*, 336 Mass. 396, and cases cited.

There was medical testimony from only one physician, a surgeon who operated on the employee on August 29, 1955, and thereby relieved the disabling condition. The physician testified that the first injury which the employee sustained, on August 13, 1954, resulting from a fall, consisted of two lesions, "the dislocation of his elbow with irritation of the ulnar nerve at the level of the elbow and . . . either a primary or a secondary scalenus anticus syndrome," that is an "irritation of the inferior components of the brachial plexus," and that the scalenus muscle "is located at an area arising from the transverse processes of the second, third, fourth and fifth vertebral bodies in the neck." We note a dictionary definition of "syndrome" as "combination of symptoms." The physician testified further that the frequent pain and discomfort which the employee had sustained after the fall on August 13, 1954, were "exacerbations" of the syndrome, that is, "aggravation[s] of the symptoms but not . . . of the condition," and that what happened on August 16, 1955, was only such an exacerbation of the symptoms of the first injury and not a new injury. It was such an effect as, for example, occurs from letting water impinge upon an open tooth. The incident "had no relation to the necessity for operation and the dis-

ability which followed." Any disability which followed an exacerbation would abate and the employee would be back in the same condition. The relationship of the ensuing disability to the physical movement by the employee on August 16 was trivial.

The employee testified that in the period between August 13, 1954, and August 16, 1955, his arm went "numb on him quite often"; he "had continual pain in his shoulder and neck, and the elbow gave him terrific pain when he picked up anything . . . it is fair to say he had the same symptoms generally in his arm off and on — sometimes they were worse than others. He took pills all the time." After the August 13, 1954, injury he went back to work in November; on November 11, 1954, when he was lifting a desk his arm went numb again and the doctor suggested rest so he did not go back until March 20, 1955. His employer, he found, did not need him so he went to work for a contractor at Westover Field, where he was having "an awful lot of pain in it and it was going numb . . . quite often." The doctor there told him to "take it easy." In June on that job, a cement scoop hit his left elbow. He went back to work after that injury on July 5 and was laid off in August.

The employee also testified that he took a new job on August 15, 1955, and on August 16 he started to work at 8 A.M. at his job of handling and delivering furniture. In the morning he moved furniture in the warehouse and loaded the truck for the afternoon delivery. After lunch he went out as the helper on the truck. At about 1:15 P.M. or 1:20 P.M. while helping take a chest off the truck his left hand "went numb and started to turn black." His hand got worse as the chest was brought to the ground and upon completion of the delivery he went to a doctor. "Witness put . . . [the chest] on his right knee to put it down and was balancing it on his right hand. . . . He wasn't giving [it] any balance from his left hand." "[T]here was no weight on his left hand — he was holding this piece with his right hand and . . . reaching out with his left hand and it went numb." There was evidence from the physician that on

August 22 the employee stated that upon the happening of the incident he had severe pain in the neck and shoulder with radiation down to the elbow and increased numbness in the last two fingers. The doctor testified that when he saw the employee first on August 22, 1955, "he was crying with pain . . . he was frightened, [and] worried and [he] wanted to know what was wrong, etc."

The physician also testified that work load and stress could serve to accentuate the syndrome, which was already manifest, that in view of the half day's work on August 16 involving moving furniture this was one of the incidents where exacerbations occurred because of work load or stress, and that he did not know that the employee was as well able to work on August 22 as on August 15. The physician was asked whether, basing his answer on evidence that the employee's arm bothered him from the time it was first injured in August, 1954, and was sore when he went back to work, he had an opinion as to whether the August 16 incident had any influence on the disability or the necessity for the operation and answered, "These are the factors upon which the need for surgery was based. Q. Separate the two . . . confine the question to the disability. A. Yes, I find that there was an exacerbation due to that. Q. An exacerbation of the symptoms? A. Yes." He also testified that "he doesn't know whether . . . [the employee] was disabled physically, mentally or what, but it bothered him so he went to a doctor."

It was open to the board on the evidence to find that what happened on August 16 was a contributing cause of the employee's ensuing disability. The conclusions were open that the previous "exacerbations" had been such that the employee was able to get along with rest or not working, but that the August 16, 1955, incident led to pain of an emergency nature, which not only prevented work but called for operative relief. We think that what happened can also be deemed, for purposes of the rule for determining liability of successive insurers, an "injury" notwithstanding the medical opinion that the basic condition remained the same.

The only manifestation of the "irritation of the inferior components of the brachial plexus" which constituted the continuing injury was in the subjective symptoms. The board could find that there had been an increase in severity of the symptoms by reason of the employee's exertion in the course of his work. The guess might be hazarded that in the circumstances no one could conclude with any assurance that some significant physical change or shift of position, in the region of the scalenus muscle, with continuing effect on the nerve or nerves which were, from time to time, registering pain, had not occurred. However that may be, we think that it was within the fact finder's prerogative to weigh the reported symptoms as well as the medical opinion, and that a disabling increase in symptoms of some days' duration as a result of the stress and exertion of work could be found to be an injury. See cases in which we have said that an inference of injury in the course of employment may be drawn where signs of hurt were manifested following exertion. *Crowley's Case*, 287 Mass. 367, 375. *Harrington's Case*, 285 Mass. 69. *McLaughlin's Case*, 259 Mass. 25. *Lovely's Case*, 336 Mass. 512, 515. Compare *Ralph's Case*, 331 Mass. 86 (tuberculosis); *Murphy's Case*, 328 Mass. 301, 303 (effect of coronary thrombosis on cancer death); *Josi's Case*, 324 Mass. 415, 417–418 (effect of fall on arthritis). It is not controlling that at the critical moment there was no weight on the left hand. The work being done, and which had been done for several hours, involved lifting and moving heavy objects.

That the new injury was slight and very limited in its contribution to the disability is immaterial. Rule stated in *Rock's Case*, 323 Mass. 428, 429 (but compare finding and holding). See *Morin's Case*, 321 Mass. 310, 312; *McConolouge's Case*, 336 Mass. 396, 398; *Fitzpatrick's Case*, 331 Mass. 298, 300.

The decree is affirmed. Costs and expenses of this appeal under G. L. c. 152, § 11A, shall be allowed by the single justice.

*So ordered.*