CONSTANTINE HACHADOURIAN'S CASE.

Hampden.    September 23, 1959. — December 11, 1959.

Present: WILKINS, C.J., WILLIAMS, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Workmen's Compensation Act*, Incapacity. *Proximate Cause. Evidence, Opinion:* expert.

A finding by the Industrial Accident Board in a workmen's compensation case, that there was a causal connection between the claimant's being struck on the shoulder while at work and an arthritic condition of the shoulder for which he claimed compensation for partial incapacity beginning nearly two years later when, after having worked steadily meanwhile, he was laid off because of a reduction in the work force, was not warranted solely on opinion testimony of a medical expert which showed no more than a possibility or chance that there was such a causal connection.

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the workmen's compensation act.

The case was heard by *Thompson, J.*

*Thomas L. Goggin,* for the claimant.

*Arthur E. Quimby,* for the insurer.

COUNIHAN, J. The employee in this workmen's compensation case appealed from a decree of the Superior Court which dismissed the claim of the employee after a ruling that "the employee has failed to sustain the burden of proving that he was partially incapacitated for work from February 12, 1954, to June 6, 1955." There was no error.

The employee contended that on April 10, 1952, while engaged in his regular work, he was injured as the result of having been struck on his right shoulder by a heavy bundle of steel wire which a fellow employee was moving. The employer's report of the injury was filed with the Industrial Accident Board on May 6, 1952, and the employee's claim for compensation was filed on April 16, 1954.

After hearing, the single member found that "the employee sustained a personal injury [on April 10, 1952] which arose out of and in the course of his employment and was causally related thereto; and as a result thereof the employee has been partially incapacitated from his regular employment as a wire worker from February 12, 1954, to date and continuing." The reviewing board affirmed and adopted the findings and decision of the single member except as to the duration of the employee's incapacity. It determined that the partial incapacity existed only from February 12, 1954, to June 6, 1955, and awarded compensation accordingly. Upon certification to the Superior Court by the insurer, a decree was entered, as we have said, dismissing the claim.

The evidence before the single member shows that the employee had been employed as a welder by the Cheney Bigelow Wire Works for a period of about twelve years prior to February 12, 1954, when he was laid off because of a reduction in the work force. He never returned to work

there.  On Thursday, April 10, 1952, while at work he was injured in the manner we have already described.  He stayed away from work on Friday and Saturday and on his return on Monday he notified his foreman of his injury.  He continued to work steadily until February 12, 1954, when he was laid off for reasons we have indicated.  He contended that thereafter he was unable to obtain any employment because of pain and limitation of movement in his right shoulder.

On the Monday following the accident he was sent by a nurse at his work place to the doctor for his employer and he was treated by him.  From then on, both before and after February 12, 1954, he was treated intermittently by several other doctors.

An orthopedic surgeon, whose qualifications as an expert were admitted by the insurer, testified before the single member in behalf of the employee.  He first examined him on June 6, 1955.  He said he found an industrial disability in the right shoulder of the employee which had prevented him from working from the time he was laid off up to the date of the examination.  He also said that in his opinion the incapacity had ceased when he examined the employee so that he could do the same work then which he was doing when he was laid off.  In his opinion the incapacity of the employee to work from February 12, 1954, to June 6, 1955, was causally related to the injury of April 10, 1952, because the condition of the right shoulder could have been precipitated by trauma.  In a written report of his examination which was in evidence he stated in part that in his opinion it was reasonable to assume that the employee had a degenerative disturbance of his right shoulder, both inside and outside of the joint, which amounted to definite arthritis and peri-arthritis and that accounted for the symptoms of which he complained.  "It seems . . . reasonable to me to assume that, while fundamentally due to changes instant to age and years of use, . . . the precipitating factor was the alleged injury of [a] direct blow with the subsequent disturbance produced by this severe concussion."

He further testified in cross-examination as follows: Q. "Doctor, having in mind the man's advanced age, the condition you saw, and the findings you made . . . is it a fact that . . . in your opinion, [it] is equally consistent that this condition could be present without trauma as it is with trauma?" A. "In my opinion it would certainly be possible for it to occur without trauma, but I believe that trauma can play a precipitating cause . . . ." Q. "It is equally consistent either way?" A. "In so far as the condition existing, yes." He further testified that he would consider it not only possible but presumably reasonable. That was as far as he wanted to go. In redirect examination he was asked, "In this case, Doctor, based upon the history and your physical findings, did you have any opinion as to whether or not the accident . . . was a precipitating factor in the conditions of which the man complained . . . [on] June 6, 1955?" His answer was "That it was possible that it did."

In concluding his testimony he was asked in redirect examination by counsel for the employee, "Then, notwithstanding anything you have said in cross-examination, is it still your opinion that the injury which was described to you as occurring on April 10, 1952, was a precipitating factor in the increase of the arthritic process?" He answered, "It is my opinion that it might be a precipitating factor." Then in answer to a question by counsel for the insurer he said that as "the thing stands . . . it might well not be a precipitating factor."

At the hearing before the single member another medical expert, whose qualifications were admitted by counsel for the employee, was called by the insurer. He testified that he examined the employee on December 29, 1953. In his opinion the employee on April 10, 1952, was suffering from the disease of degenerative arthritis which is a progressive affair — "an aging process." It "is a systemic disease and not a local one." The only relationship between the degenerative arthritis and the injury of April 10, 1952, would be a matter of aggravation. The fact that the employee lost

no time and has had rather mild symptoms intermittently led him to believe that the aggravation was mild and had long ceased to exist when he examined the employee.

The issue before us is whether there was sufficient evidence before the single member to warrant the implied finding of the single member and the board of review that there was a causal connection between the injury which the employee sustained on April 10, 1952, and the disability of the employee which appeared coincidentally with the laying off of the employee on February 12, 1954.

It has been well established that this court must sustain the findings of the board of review and they are final unless they are wholly lacking in evidential support or tainted by error of law, and this is true even if different findings could have been made by the board. *Hartman's Case*, 336 Mass. 508, 511. *Mahoney's Case*, 337 Mass. 629, 631.

In deciding this case we must examine the evidence, having in mind that the question is not what conclusion we would reach had the matter come before us in the first instance, but whether there is sufficient evidence, including all rational inferences which may be drawn from the evidence, upon which the findings of the board could have been made. *Bajdek's Case*, 321 Mass. 325, 326. *Josi's Case*, 324 Mass. 415, 416.

In the instant case there is a dispute between the medical experts whether the injury of April 10, 1952, was causally related to the partial disability of the employee which first manifested itself immediately after February 12, 1954. This was a matter beyond the common knowledge of the ordinary layman and proof of it must rest upon expert medical testimony. It was said in *Murphy's Case*, 328 Mass. 301, 304, that it "is not for us to determine whether the opinion of . . . [a] doctor was medically sound." "A decision upon the question of causation was one of fact, resting entirely upon medical knowledge and within the province of the board to determine. Unless lacking in evidential support it cannot be disturbed by us." *Mahoney's Case*, 337 Mass. 629, 632.

But "the opinion of a medical expert, however phrased, which amounts to no more than an expression indicating the possibility or chance of the existence of a causal connection between the accident and the disability, is not enough to establish the accident as a cause and the disability as the effect." *Josi's Case, supra*, at p. 418.

In the case at bar the testimony of the medical expert upon which the employee relies was in many respects equivocal. It was confusing and sometimes contradictory. Our conclusion in this respect is amply borne out by his testimony which we have hereinbefore recited in some detail. His statement at the conclusion of his testimony was plainly unreliable and somewhat contradictory. The testimony of this medical expert was the only evidence to support the claim of the employee relative to his partial disability after he was laid off.

In these circumstances we are constrained to hold that the finding of the board of review as to the causal connection between the injury of April 10, 1952, and the partial incapacity of the employee after February 12, 1954, was lacking in evidential support. That finding was grounded upon what appears to us to be nothing more than an expression by the medical expert for the employee indicating only a possibility or chance of the existence of a causal connection between the injury and the claimed disability.

In so far as anything to the contrary appears in *Fennell's Case*, 277 Mass. 492, 496, we are not disposed to follow it.

*Decree affirmed.*