REBECCA SILBOVITZ'S CASE.

Suffolk.    November 10, 1961. — December 19, 1961.

Present: WILKINS, C.J., WILLIAMS, WHITTEMORE, CUTTER,
& SPIEGEL, JJ.

*Workmen's Compensation Act,* Incapacity, Continuing compensation.
*Proximate Cause. Evidence,* Opinion: expert.

A finding by a single member, adopted by the reviewing board, in a
workmen's compensation case that a back strain sustained by the
employee while she was at work "acted as a trigger mechanism that
precipitated a so called conversion reaction or hysteria" partially
incapacitating her was warranted on medical testimony showing more
than a mere "possibility or chance" of such causal connection. [373–
374]

After a single member in a workmen's compensation case had awarded
partial disability compensation to the time of the last hearing before
him, "to continue subject to the terms of the act," it was not improper
for the reviewing board, in a decision adopting the single member's
findings, to award compensation "to date and continuing" where, even
if there was no new evidence before the reviewing board, the self insurer
made no request to show cessation of the disability.  [374]

CERTIFICATION to the Superior Court of a decision by the
Industrial Accident Board under the workmen's compensa-
tion act.

The case was heard by *Wisnioski,* J.

*George W. Arvanitis,* Assistant Attorney General, for
the Commonwealth.

*Laurence S. Locke,* for the employee.

CUTTER, J.  The employee is a chemist, who formerly
worked at the Walter E. Fernald State School.  She seeks
workmen's compensation from the Commonwealth, as self
insurer, for disability from February 6, 1954, to March 15,
1954, from January 15, 1955, to July 11, 1955, and from
August 18, 1955, to the date of the hearings in 1958 and con-
tinuing thereafter.  The single member, by decision filed
on September 6, 1960, found "that, prior to entering the
employ of the Commonwealth . . . this employee had pain

referrable to a condition subsequently diagnosed . . . as rheumatoid arthritis . . . and that the periods of disability between February 6, 1954, and July 11, 1955 . . . were not . . . causally related to exposure to cold in the laboratory where she worked but . . . were occasioned by either a natural or fancied progression of her preëxisting condition." The single member further found "that on August 18, 1955, she sustained a [back] strain . . . arising out of . . . her employment when, in attempting to arise from an awkward kneeling position assumed by her in taking blood from a child, she fell to the floor in a sitting position; that as a result of this injury she was totally disabled for work until January 1, 1956, when her symptoms . . . subsided and she was able, from an orthopedic standpoint, to return to her work. Based on the opinions of Doctors Benda and Goldthwait, and my observation of the employee during the numerous hearings, I find that this employee is an emotional person . . . and that her injury on August 18, 1955, acted as a trigger mechanism that precipitated a so called conversion reaction or hysteria which had partially incapacitated her for work up to the time of the last hearing." The single member then concluded that the employee had been totally disabled from August 19, 1955, to and including January 1, 1956, and partially disabled thereafter, and awarded compensation accordingly, with that for partial disability to run "to and including . . . the date of the last hearing . . . to continue subject to the terms of the act." The reviewing board, on February 2, 1961, adopted the single member's findings, but as to partial disability awarded compensation "to date and continuing." A final decree was entered by the Superior Court enforcing the order of the board. The Commonwealth appealed.

1. A specialist in rheumatic disease, called as a witness by the Commonwealth, testified on cross-examination that he did not know whether the employee "ha[d] any rheumatoid arthritis but he . . . [did] feel she ha[d] . . . a severe conversion reaction." He had "seen . . . conversion hysteria or traumatic neurosis . . . result from a back strain."

When asked if "she may have as a result of . . . [the] incident of August 18 a traumatic neurosis, the witness replied, let us say perhaps the incident of August 18 was like the trigger of a gun." Asked if that incident "precipitated it, the witness replied, precipitated the picture which he saw [when he examined the employee] on October 7, 1958." Later when asked whether "an adequate cause for conversion reaction would be any injury," he replied that "this is a question for an expert witness . . . to answer that properly what you need is a psychiatrist and he [the witness] is not qualified." We cannot say that the single member, who heard the somewhat ambiguous and not very well reported testimony of this doctor, was not justified in interpreting it (see *Kerr* v. *Palmieri,* 325 Mass. 554, 559–560, and cases cited) as indicating more than the "possibility or chance of the existence of a causal connection" (see *Hachadourian's Case,* 340 Mass. 81, 86) between the incident of August 18, 1955, and the conversion reaction.

2. The Commonwealth contends that it was improper for the reviewing board, which presumably had no new evidence before it, further to extend (to the date of its own decision in 1961) the partial disability compensation from October 16, 1958, the date of the last hearing before the single member. The record reveals no request by the Commonwealth, prior to the decision of the reviewing board or indeed thereafter, for any reëxamination of the employee, or to submit evidence that partial disability had terminated in whole or in part. See G. L. c. 152, § 12. See also *Korobchuk's Case,* 280 Mass. 412, 416. We interpret the reviewing board's order as leaving the continuance of partial disability compensation subject to all applicable provisions for review found in c. 152. See e.g., §§ 45, 69B (both as amended through St. 1955, c. 174, § 5).

3. The decree is affirmed. Costs of this appeal are to be determined by the single justice.

*So ordered.*