ALFRED A. RENNIE's (dependent's) CASE.

Suffolk. April 7, 1970. — June 12, 1970.

Present: WILKINS, C.J., SPALDING, CUTTER, REARDON, & QUIRICO, JJ.

*Workmen's Compensation Act*, Injuries to which act applies. *Evidence*, Opinion: expert.

In a workmen's compensation case respecting an employee of a gas company who had been receiving medical treatment "for high blood pressure and hypertension" for about three years before his death, evidence that following symptoms of heart disorder one evening and early next morning he lifted a twelve pound meter from his employer's truck, carried the meter to a cellar, partially installed it about five and one-half feet above the floor, and returned to the truck, where he was soon found dead, together with the opinion of a physician called as an expert, warranted conclusions that the employee's activity that day caused a fatal heart attack and that his death resulted from an injury arising out of and in the course of his employment. [644]

A physician's opinion in a workmen's compensation case as to the cause of the employee's death was properly considered where it was not based exclusively or primarily on information in the death certificate of the employee as the insurer alleged but on the employee's medical symptoms and physical activity shortly before the time of his death. [646]

Although a hypothetical question put to a physician in a workmen's compensation case might have been deficient in assuming certain facts in

asking his opinion as to the cause of death of the employee, there was no error in allowing the question and answer since the physician did not place explicit reliance on such assumed facts and he could have reached the same conclusion from other facts in evidence. [646–647]

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the Workmen's Compensation Act.

The case was heard by *Campbell. J.*

*James C. Gahan, Jr.* (*Richard L. Little* with him) for the insurer.

*Bernard T. Loughran* for the claimant.

QUIRICO, J. This is an appeal by an insurer under the Workmen's Compensation Act from a decree in the Superior Court ordering payment of compensation under G. L. c. 152, § 31, for an employee's death to his widow (claimant) in accordance with the decision of the reviewing board which adopted the findings and decision of the single member.

The insurer contends that the evidence at the hearing before the single member was insufficient to support his finding, affirmed by the reviewing board, that the employee's death was the result of an injury arising out of and in the course of his employment. It argues also that error was committed in allowing a hypothetical question put to an expert witness for the claimant.

The testimony and documentary evidence considered by the single member is included in the record before us. It may be summarized as follows: In May, 1960, Alfred A. Rennie (employee) was working for the Boston Gas Company (employer) as a Bi-serviceman. One of his jobs was to install and maintain gas meters in the buildings of the company's customers. At this time he was sixty-three years of age. On May 16, the day before his death, the employee worked the regular day shift from 8 A.M. to 5 P.M. He also worked that evening and returned home about 10 P.M. While he was having a cup of tea with his wife, he put his head in his arms on the table and said he had never felt so tired in his life. Shortly thereafter he went to bed but got up between 1.30 and 2 A.M. and went to the bathroom.

His wife followed him and saw him clutching his two hands to his chest. The employee said he had indigestion so she gave him some alka seltzer. When they returned to bed, he complained of the room being too warm although two windows were open. He again went to the bathroom and sat, but shortly returned to bed and went to sleep. The next morning when he arose at his regular time of 6:15 A.M. his wife suggested he stay home. He refused, saying, "No, I feel fine — why should I stay home."

That day he received a work order directing him to go to 54–56 Lothrop Street, Newtonville, to install a five-light meter, in replacement of one removed on May 9. He was found apparently dead in the seat of the employer's truck at that address about 10:50 A.M. Upon being taken to the Newton-Wellesley Hospital he was pronounced dead on arrival. The cause of death listed on the death certificate was "Acute Myocardial Infarction, Sudden death, Hypertension."

Later that morning a company official went to that address and into the cellar of the house. He found a five-light meter, weighing between ten and twelve pounds, partially installed on the wall five and one-half feet from the floor. Such meters were carried on the service trucks for installation. Inspection revealed that a fire valve was missing from the partially installed meter and it was not found near the point of installation.

The employee had been receiving medical treatment and taking pills "for high blood pressure and hypertension" since 1957.

Counsel for the claimant called and questioned Dr. Elliot L. Sagall, a specialist in internal medicine and cardiology. Counsel summarized the evidence described above and asked Dr. Sagall if he had "an opinion whether or not there . . . [was] a causal relationship between the work activities of the employee on May 17, 1960 and his death"?

The doctor responded that the facts indicated "that this employee, under prior treatment for hypertension,

was awakened during the early morning of May 17, 1960 with symptoms consistent with an acute myocardial infarction, that he worked that morning despite having had the symptoms the previous night and that he was found dead in the truck within a few minutes after having performed physical effort, namely, carrying in a meter, installing it partially, and walking back to the truck, and the cause of death as listed in the death certificate is listed as acute myocardial infarction, sudden death, would in my opinion indicate that this physical effort that he performed in connection with his work within a few minutes preceding his death, strained an already weakened and damaged heart to precipitate an acute cardiac attack, therefore, his death was causally connected to that work activity."

Counsel for the insurer cross-examined Dr. Sagall on the difference between myocardial infarction and coronary insufficiency, the symptoms of each, the symptoms of the deceased employee and their significance in determining the cause of death. On redirect examination Dr. Sagall testified that the opinion given by him in direct examination was not changed; and further that either coronary insufficiency or myocardial infarction can be aggravated by any physical activity.

Dr. Thomas Connelly, a specialist in internal medicine and cardiology was called by the insurer. He testified that the symptoms apparent on the evening of May 16, and in the early hours of May 17, were indicative of "a bout of acute coronary insufficiency, symptomatic of the fact that his underlying coronary circulation was nearing a critical stage." He expressed the opinion that the employee's death was caused by acute coronary insufficiency. He concluded that the injury and resulting death were not related to the morning's work.

The single member summarized the evidence concerning the employee's activity on May 16 and 17 and his symptomatology as well as Dr. Sagall's testimony and concluded, "[T]his employee sustained either an acute attack of coronary insufficiency or an infarction in the early hours of the

morning that he died, and . . . the additional stress of his work in installing the meter on the morning of May 17, 1960 involved physical exertion superimposed upon an already weakened heart and bears direct causal relation to his death which ensued shortly thereafter . . . ." On the basis of this factual conclusion, he found further that the death was the result of an injury arising out of and in the course of his employment.

The insurer contends that this decision contains many unsupported findings. Upon examination, however, these alleged "unsupported findings" reflect the sense of the testimony even though paraphrased and also inferences drawn by the fact finder. The meaning remains the same. The single member did infer that the Lothrop Street job was the employee's first assignment on May 17 and that his body was discovered about ten o'clock. Even assuming the insurer's contention that these two inferences were unsupported is correct, the facts thus inferred are not germaine to the central issue: whether the employee's job related activity caused the death. Irrespective of when the employee arrived at the Lothrop Street address, the evidence amply supports the conclusion that he lifted a ten to twelve pound meter, carried it from the truck to the cellar, and partially installed it about five and one-half feet above the floor. This in turn supported the inference that this activity caused the heart disorder precipitating death.

The insurer also seems to argue that since *its* expert testified that the employee had coronary insufficiency and death from such a condition could be sudden irrespective of the type of activity, there is only a statistical possibility that his death was job-related. However, the single member indicated in his decision he relied exclusively on the medical testimony of Dr. Sagall. One can infer from this that he discounted the testimony of the insurer's expert completely as was his prerogative. *Rackowski's Case*, 273 Mass. 363. *DePietro's Case*, 284 Mass. 381, 384. *Ferreira's Case*, 294 Mass. 405, 406. *Mosesso's Case*, 327 Mass. 525, 527.

*Shirley's Case,* 355 Mass. 308, 310. See *Luczek's Case,* 335 Mass. 675, 677–678.

Related to this argument, is the contention that Dr. Sagall's testimony should have been ignored by the single member since, according to the insurer, Dr. Sagall conceded that an opinion as to the cause of death could be based only "on statistical probabilities." On cross-examination, counsel for the insurer asked Dr. Sagall whether one could form the opinion that the cause of death was myocardial infarction as asserted on the death certificate merely by examining a body dead on arrival without an autopsy and without the individual's history of symptomology. In response Dr. Sagall clarified that *his* opinion was based on the hypothetical question which included the employee's symptoms. He refused to answer categorically counsel's question whether it was possible to conclude on the limited evidence available to those filling out the death certificate that he died of acute myocardial infarction. He merely said under those circumstances "it is on statistical probabilities." On redirect examination he testified that his opinion as to the cause of death would not change if he were to disregard the reference to the cause of death stated in the death certificate. Dr. Connelly categorically concluded in response to the same question that it was impossible to reach a conclusion that myocardial infarction was the cause of death.

In *King's Case,* 352 Mass. 488, 491, we held that it was error to find that the employee's death was caused by an accident on the job when that finding rested exclusively on the same Dr. Sagall's testimony which expressed no more than a mathematical likelihood that the employee's death was causally related to his accident. The insurer argues that the same situation exists here. We disagree. As the evidence summarized above indicates, Dr. Sagall limited his opinion that "[I]t is on statistical probabilities," to the very limited and incomplete facts contained in the hypothetical question put to him by the insurer's counsel. He was asked in that question whether one could conclude that the employee had a myocardial infarction merely upon a physical

examination of his body after death, which was the only evidence available to the person filling out the death certificate. The rest of Dr. Sagall's testimony clearly demonstrates that he did not base his own opinion as to cause of death exclusively or primarily on the information in the death certificate. The focus of his attention was on the employee's symptoms apparent between 10 P.M. and 2:30 A.M. and his physical activity thereafter to the time of his death.

The final argument presented to us is that the hypothetical question put to Dr. Sagall by the claimant's counsel contained factual assumptions unsupported by the evidence. Counsel for the insurer took timely exception to the posing of the hypothetical question and the answer before the single member, but the record does not disclose whether the insurer raised the issue before the reviewing board or the Superior Court. Thus, ordinarily this court would not consider the matter. *Perrotta's Case,* 318 Mass. 737, 740. *Haley's Case,* 356 Mass. 678, 682, and cases cited. However, during oral argument before us counsel for the insurer presented an affidavit with exhibits which tends to indicate that the matter was seasonably raised before the reviewing board and in the Superior Court. We are reluctant to permit a party to thus supplement a deficient record for whose preparation it was responsible. However, for purposes of this case we will assume the exceptions were raised at the proper times. The hypothetical question may have been deficient in assuming that the employee arrived at the Lothrop Street address about 10:30 A.M., but this particular time is not critical. It is true, Dr. Sagall's opinion assumed that the employee had lifted the meter within a few minutes preceding his death. However, he never placed explicit reliance on this particular time and could have reached the same conclusion from the following facts: (1) that no meter was on the premises prior to May 17; (2) that the employee was assigned the job of installing the meter on that date; (3) that meters to be installed were carried on the service trucks; (4) that a meter had been partially installed at 56 Lothrop Street; and (5) that the employee was

found dead in the service truck in front of that address about 10:50 A.M. Thus, there was no error in allowing the hypothetical question.

The decree of the Superior Court is affirmed. Costs of appeal are to be determined by the single justice.

*So ordered.*