JOHN TASSINARI'S CASE.

Suffolk.  March 19, 1980. — May 6, 1980.

Present: BROWN, PERRETTA, & KASS, JJ.

*Proximate Cause.  Witness,* Expert.

Recommittal of a workmen's compensation case to the Industrial Accident Board was not required by the fact that the board, in its finding of a causal relationship between a head injury suffered by the employee and the aggravation of a preexisting condition, failed to make a specific finding that the employee had suffered a head injury where it was apparent that the board impliedly found that the employee sustained such an injury and such a finding was warranted by the evidence.  [685]

Recommittal of a workmen's compensation case to the Industrial Accident Board was not required on the basis that the testimony of the employee's medical expert as to the causal relationship between the employee's head injury and the aggravation of a preexisting condition was speculative because the expert was unaware of certain facts subsequently presented to him during cross-examination by the insured where the expert reaffirmed his opinion after learning the facts. [685-686]

Recommittal of a workmen's compensation case to the Industrial Accident Board was not required by the fact that a deposition of one of the insurer's medical experts was not considered by the single member or the board where it did not appear that the deposition was presented to the single member or that the insurer presented the issue of an improper exclusion of the deposition to the board.  [686]

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the Workman's Compensation Act.

The case was heard by *Morse, J.*

*Norman P. Beane, Jr.,* for the insurer.

*Joseph R. Buttner* for the employee.

PERRETTA, J.  The employer's insurer in this claim for compensation under G. L. c. 152 appeals from a Superior

Court judgment awarding compensation to John Tassinari (the employee) in accordance with a decision of the reviewing board which had affirmed and adopted the findings of the single member. These findings were to the effect that the employee suffered work related injuries in 1962, 1966, and 1972; that his posttrauma epilepsy and secondary emotional distress were "causally initiated" by his 1962 injury and "aggrevated by his 1972 incident at work"; and that he has been totally disabled since March, 1973. We affirm the judgment.

The evidence taken by the single member shows that in February, 1962, while in the course of his employment, the employee suffered a severe blow to his head which left him unconscious and which required him to be hospitalized. Seven months later he experienced his first grand mal seizure, and he has since suffered from dizziness, lightheadedness and headaches. In 1966, the employee was at work standing on staging which tipped over, and he fell to the ground hitting his head and injuring his arm and back. In an incident unrelated to his employment and occurring in August of 1971, the employee's child accidentally struck him in the head with a golf club. The employee suffered a small puncture wound and bruise on the top of his scalp. He experienced a further accident on August 18, 1972, when he was at work dismantling a meat box and a section of the roof fell on him, knocking him down and dazing him. This section was "V" shaped, measured about four feet by fourteen feet, and weighed between two and three hundred pounds. The employee's medical expert, a neurosurgeon, testified that in his opinion the employee's posttrauma epilepsy and emotional problems were initiated by the 1962 accident, and that the August, 1972, incident aggravated these conditions, leaving the employee totally disabled since March, 1973.

The insurer argues that this matter should be recommitted to the board for further findings on the issue of a causal relationship between the August, 1972, injury, and the aggravation of a preexisting condition. It alleges that the

present findings are deficient in two respects; first, that there is no specific finding that the employee suffered a head injury on August 18, 1972, and second, that the testimony of the employee's medical expert was speculative and conjectural.

We do not agree that the board's finding of a causal relationship is flawed by its failure to make a specific finding of a head injury to the employee on August 18, 1972. "In reviewing the findings of the board, we examine the evidence to determine whether the findings . . . could be reasonably deduced from the evidence and the rational inferences of which it was susceptible, and the decision of the board must be sustained if there may be found from the evidence any facts or combination of facts that would support it. It is the exclusive function of the board to consider and weigh the evidence and to ascertain and settle the facts." *Chapman's Case*, 321 Mass. 705, 707 (1947). *Cummings's Case*, 2 Mass. App. Ct. 849 (1974). The employee described the 1972 work related accident in the following manner: "[T]he whole section came down and hit me right on top of the head . . . . I went straight to the floor and seen stars and felt a pain directly on top of the head." In view of this testimony and that of the employee's medical expert, it is apparent that the board impliedly found that the employee sustained a head injury in his August, 1972, accident.

The insurer's characterization of the medical expert's testimony on behalf of the employee as speculative is predicated upon the expert's unawareness (as he conceded) of two facts which were subsequently presented to him during his cross-examination by the insurer. The medical expert had been unaware that the employee had been hit by a golf club. He acknowledged that a blow to the head by a golf club could produce brain damage, but he added that he would have to know more about the blow. The expert's discovery of the fact that the employee had sustained this blow, which the board found to be "minor in its nature and effect," did not cause him to qualify or otherwise to change his opinion. Nor did the expert know that the employee was seen by a doctor

and X-rayed after his August 18, 1972, accident, although a skull X-ray was not taken. The insurer asked the expert whether such an X-ray would be taken if there was "a blow to . . . or an injury to the brain." The medical expert responded that he would expect that a skull X-ray would be taken if such an injury were recognized. The insurer put no further question to him on this issue, and on redirect examination the medical expert reaffirmed his opinion that "the consequence of each accident was a contributing factor" to the employee's disability. Causality must be shown by a probability (*Blosck's Case*, 277 Mass. 451, 453 [1931]; *Silbovitz's Case*, 343 Mass. 372, 374 [1961]; *Hale's Case*, 4 Mass. App. Ct. 769, 769 [1976]), and the employee need not exclude all other possibilities. *Blanchard's Case*, 277 Mass. 413, 415 (1931). Where the causation between the work-related injuries and the resulting disability is not a matter of common knowledge and is beyond the experience of laymen, the proof must rest upon expert medical testimony, *Sevigny's Case*, 337 Mass. 747, 749 (1958), the probative value of which was to be weighed by the fact finding tribunal. *Murphy's Case*, 328 Mass. 301, 304 (1952). A careful review of the evidence before the board shows that the testimony of the employee's expert indicates "more than the 'possibility or chance of the existence of a causal connection.'" *Silbovitz's Case*, 343 Mass. at 374, quoting from *Hachadourian's Case*, 340 Mass. 81, 86 (1959). See also *Hale's Case*, 4 Mass. App. Ct. at 769.

The insurer also maintains that recommittal is required because the deposition of its medical expert, see G. L. c. 152, § 5, was not considered by the single member or the board. The record, however, does not indicate that the deposition was ever presented to the single member. At the conclusion of the hearing before the single member, he gave the parties five months in which to depose six medical witnesses. In his report of the evidence, the single member listed as an exhibit five depositions filed by the parties and the filing dates of each. Four of these depositions were offered by the insurer, and of this number three were filed subse-

quent to the hearing. The disputed deposition is not reflected on the single member's list of exhibits. We will not assume from this record that the deposition had been timely filed with the single member but wrongfully disregarded or excluded from evidence by him. Moreover, the record does not reflect that the insurer presented the issue of an improper exclusion of the deposition to the board, and we need not consider it. See *Akins's Case,* 302 Mass. 562, 566 (1939); *Cormier's Case,* 337 Mass. 714, 717-718 (1958); *McHugh's Case,* 1 Mass. App. Ct. 803, 804 (1973). Even were we to assume that the insurer presented this issue to the board and that it denied recommittal for consideration of this testimony by the single member, we perceive no abuse of discretion by the board. See *Hale's Case,* 4 Mass. App. Ct. at 770. The insurer's medical expert was deposed on the basis of his examination of the employee one year before the 1972 work related injury and for the purpose of ascertaining his opinion whether the employee in February, 1962, experienced a grand mal seizure. Neither the single member nor the board had made a specific finding on this issue, and, if the board had the deposition, it did not abuse its discretion in denying any request for recommittal which the insurer might have made.

*Judgment affirmed.*