SHEILA ROBINSON *vs.* CONTRIBUTORY RETIREMENT
APPEAL BOARD.

Suffolk.   June 6, 1985. — August 22, 1985.

Present: GREANEY, C.J., BROWN, & WARNER, JJ.

*Proximate Cause. Retirement. Death. Contributory Retirement Appeal
Board. Evidence,* Before quasi judicial tribunal, Expert opinion. *Administrative Law,* Findings.

Where, in a proceeding by a school teacher's surviving spouse claiming
accidental death benefits under G. L. c. 32, § 9 (1), the findings of the
Contributory Retirement Appeal Board showed no basis for the board's
rejecting uncontradicted testimony by the spouse's expert witness as to
the causal connection between the employee's duties and his death from
a heart attack, this court concluded that the board's findings fell short
of the requirements for appropriate judicial review and, on appeal by
the board from a Superior Court judgment vacating its decision, directed
that the matter be remanded to the board for further findings. [638-641]

CIVIL ACTION commenced in the Superior Court Department
on February 24, 1982.

The case was heard by *William Highgas, Jr.,* J., on a master's report.

*Vincent L. DiCianni,* Assistant Attorney General, for the
defendant.

*Avram G. Hammer (John W. Costello* with him) for the
plaintiff.

BROWN, J.  This action was brought in the Superior Court
pursuant to G. L. c. 30A, § 14, for review of a decision made
by the Contributory Retirement Appeal Board (CRAB). CRAB
denied accidental death benefits to the plaintiff under G. L.
c. 32, § 9, based upon its determination that the plaintiff had
"failed to establish, by substantial evidence, that her late husband's death was causally related to the performance of his
duties." A judge of the Superior Court reversed that decision

on the ground that there was no "substantial evidence" to warrant CRAB's rejection of uncontroverted testimony by the plaintiff's expert witness that the decedent's death was caused by his employment. CRAB has taken this appeal from the ensuing judgment.

The facts, as found by the hearing officer and adopted by CRAB, are as follows. The decedent was employed as art director for the Arlington public schools from 1968 through October 7, 1971. In addition to supervisory and administrative responsibilities, his duties included teaching one art class. The decedent's office was located in the subbasement of the Arlington High School, and his duties required him to travel to a number of locations within that multilevel high school building.

During the summer of 1971, the decedent consulted a physician with complaints of chest and left shoulder pain and was diagnosed as having arteriosclerotic heart disease. On October 7, 1971, the decedent left his home at about 7:00 A.M. and arrived at Arlington High School at about 7:45 A.M. When he left home he seemed "tired" but otherwise looked the same as usual.

Shortly after 8:00 A.M., the decedent arrived in the office of Edward Bradbury, a fellow teacher. He was coming from his office, which was approximately thirteen steps below, and was heading to his teaching station, which was on the top floor of an adjacent building. The decedent was in physical distress when he reached Edward Bradbury's office; his complexion was dark, he was having difficulty breathing, and he complained of tightness in his chest. The decedent remained in Bradbury's office for approximately one hour, then went to the office of Roy Bradbury, which was on the same floor as his teaching station. At Roy Bradbury's office, where he remained for about fifteen minutes, the decedent again complained of chest pains.

Later that afternoon, while driving home from work, the decedent's car went off the road. He was pronounced dead on arrival at Glover Memorial Hospital. The certificate of death states that he died of "natural causes due to acute coronary

thrombosis with myocardial infarction." The results of a post-mortem examination disclosed the existence of coronary arteriosclerosis, with an old myocardial infarction. The report designated the cause of death as acute thrombosis with resulting myocardial infarction.

The plaintiff contends that CRAB's determination was erroneous as matter of law because uncontroverted testimony by the plaintiff's experts constituted substantial evidence of causation, and because there was no substantial basis in the record for CRAB's rejection of that expert testimony. CRAB responds that it was justified in rejecting the expert's opinion because it was based upon a limited hypothetical question which disregarded other possible causative factors, and that there was sufficient evidence of other potential causes to support its determination that the plaintiff had failed to satisfy her burden of proof. A decision of CRAB may be set aside only if based upon an error of law or unsupported by substantial evidence. G. L. c. 30A, § 14 (7) (*c*) & (*e*).[1]

The plaintiff's expert witness, a physician specializing in internal medicine and cardiology, testified that it was his opinion that the decedent's death was caused by an acute myocardial infarction which was triggered by the physical stress of climbing stairs superimposed upon his preexisting arteriosclerosis. The doctor had not examined the decedent but based his opinion upon the death certificate, the postmortem examination record, and a hypothetical set of facts propounded by the plaintiff.[2] The following factors formed the basis of the expert's opinion: (1) decedent's history of heart disease which rendered him

---

[1] "Substantial evidence is 'such evidence as a reasonable mind might accept as adequate to support a conclusion' taking 'into account whatever in the record detracts from its weight [citations omitted].'" *Lycurgus* v. *Director of the Div. of Employment Sec.*, 391 Mass. 623, 627-628 (1984). See G. L. c. 30A, § 1(6). See also *Cataldo* v. *Contributory Retirement Appeal Bd.*, 343 Mass. 312, 314 (1961).

[2] The facts assumed in the hypothetical were essentially the same facts adopted by CRAB in its decision and thus satisfy the requirement that they have an adequate basis in the evidence. See *State Bd. of Retirement* v. *Contributory Retirement Appeal Bd.*, 342 Mass. 58, 66 (1961).

susceptible to the ill effects of physical or emotional stress; (2) the symptoms which the decedent suffered after climbing the stairs from his office to Edward Bradbury's office (e.g., dark coloring, difficulty in breathing, and tightness in his chest); and (3) the autopsy report, which showed a recent myocardial infarction and thrombosis. The doctor explained that the clinical symptoms observed by the decedent's coworker after the stair climbing incident indicated that the acute myocardial infarction occurred at that time and resulted in the decedent's death at the wheel of his car several hours later.

CRAB does not challenge the validity of the facts assumed by the plaintiff's expert, but rather takes the position that it was justified in rejecting the expert's opinion as "speculative" because it did not consider other potential causes of the decedent's death. No countervailing medical or expert evidence was offered by the defendant, but there was quite vigorous cross-examination of the plaintiff's expert as to the possibility that improper diet, smoking, emotional stress from his wife's illness, or the strain of driving had caused the decedent's myocardial infarction. The doctor conceded that, based upon the evidence, he could not rule out the possibility that the decedent had already been "in distress" when he arrived at school that morning, but maintained that his opinion was in accord with reasonable medical certainty and probability based upon the evidence. The doctor rejected, as out of accord with current medical thinking, the possibility that the decedent's myocardial infarction had been caused by the long-term emotional stress of worrying about his wife. He testified that driving for forty miles could cause acute emotional stress in certain individuals, depending upon the traffic conditions and the problems encountered but that he could not assume that it had any role in causing the decedent's myocardial infarction in the absence of any evidence that the decedent had been upset by the trip. The doctor further testified that, although the decedent's smoking and diet were possible factors affecting the course of his coronary disease, in all probability they were not causative factors of the acute myocardial infarction. The doctor concluded his testimony by reiterating his opinion that, based

upon all the evidence, the stair-climbing incident precipitated the onset of the clinical symptoms which ensued immediately thereafter, and ultimately caused the decedent's death.

In order to be eligible for accidental death benefits under G. L. c. 32, § 9(1), as appearing in St. 1945, c. 658, § 1, the plaintiff must show that her husband "died as the natural and proximate result of a personal injury sustained or a hazard undergone as a result of, and while in the performance of, his duties at some definite place and at some definite time . . . ." If the decedent's death resulted from "the impact upon his already diseased heart" of a physical or emotional stress sustained in the performance of his duties, the plaintiff is entitled to recovery under G. L. c. 32, § 9(1). *Baruffaldi* v. *Contributory Retirement Appeal Bd.*, 337 Mass. 495, 498 (1958). See *Cataldo* v. *Contributory Retirement Appeal Bd.*, 343 Mass. 312, 314 (1961).[3] Pursuant to this standard, the parties agree that if the expert's testimony is believed that the decedent's myocardial infarction was caused by climbing the stairs from his office to the floor above, the plaintiff is entitled to accidental death benefits. The sole question is whether the myocardial

---

[3] The Massachusetts standard is in accord with the majority of jurisdictions which do not require that there have been an "unusual exertion" for recovery of workers' compensation benefits when the death is caused by an event or series of events at work. See 1B Larson, Workmen's Compensation § 38.30, at 7-48 (1982). The author proposes (and a few jurisdictions have adopted) a slightly more stringent standard in cases where there is some personal causal contribution in the form of a previously weakened or diseased heart, which would require that the employment contribution must take the form of an exertion greater than that of nonemployment life. See 1B *Larson, supra,* § 38.83, at 7-237, and cases cited. Under such a test, the stair climbing incident, even if found to be the cause in fact of the decedent's death, would probably not constitute adequate legal cause because it did not require greater exertion than that normally found in nonemployment life. However, in light of the Supreme Judicial Court's rejection of an unusual stress test in mental disability cases, see *Kelly's Case*, 394 Mass. 684 (1985), it is unlikely that Massachusetts is moving toward a more stringent standard in cases where the heart attack is triggered by a specific event at work. If, however, the injury is not caused by a specific incident or series of incidents, but rather arises out of "conditions" at work, there is an unusualness requirement, and the plaintiff must show that the condition "is not common and necessary to all or a great many occupations." *Zerofski's Case*, 385 Mass. 590, 595 (1982).

infarction was in fact triggered by the performance of his employment duties or by some non-work-related cause (such as the stress of driving, by his wife's illness, or by the cumulative effect of smoking and improper eating habits on his already diseased heart).

The plaintiff had the burden of proof on the question of causation. See, e.g., *Campbell* v. *Contributory Retirement Appeal Bd.*, 17 Mass. App. Ct. 1018, 1019 (1984), and cases cited. The proof of a causal connection between the employee's work duties and the myocardial infarction which caused his death was a matter beyond the common knowledge and experience of the hearing officer (and CRAB), and expert testimony was required to guide him. See *Teachers' Retirement Bd.* v. *Contributory Retirement Appeal Bd.*, 346 Mass. 663, 666 (1964); *King's Case*, 352 Mass. 488, 490 (1967). See also *Murphy's Case*, 328 Mass. 301, 303 (1952); *State Bd. of Retirement* v. *Contributory Retirement Appeal Bd.*, 342 Mass. 58, 65 (1961). Accord 3 Larson, Workmen's Compensation § 79.54 (c) (1983). The probative value of the expert testimony is for the fact-finding tribunal to decide, and where there is conflicting expert testimony, the fact finder may completely discount the testimony of one expert and rely exclusively on the other. See *Rennie's Case*, 357 Mass. 640, 644 (1970); *Smith's Case*, 9 Mass. App. Ct. 921, 921-922 (1980).

However, where, as here, there is uncontradicted testimony concerning a subject which is beyond the common knowledge and experience of the finder of fact, that testimony may not be rejected without a basis for such rejection in the record.[4] *New Boston Garden Corp.* v. *Assessors of Boston*, 383 Mass. 456, 470 (1981). See and contrast *Woolfall's Case*, 13 Mass. App. Ct. 1070, 1071 (1982) (both hearing officer and board

---

[4] See *Galloway's Case*, 354 Mass. 427, 431 (1968) (the finder of fact must rely on uncontradicted testimony concerning the questions of causation and length of disability). Accord *Wright* v. *Maryland Boat Line, Inc.*, 351 F.2d 922, 924-925 (1st Cir. 1965), which held that "when medical testimony, capable of being contradicted, is not only uncontradicted, but is also entirely plausible, and is consistent with facts otherwise established, the burden of going forward is placed upon the other party." See also 3 Larson, Workmen's Compensation § 79.52(d) (1983).

completely discounted portions of the testimony of the employee's expert based upon other evidence). Moreover, in keeping with the requirements of G. L. c. 30A, § 11(8), the fact-finding agency must make subsidiary findings of fact on the relevant issues and explain its reasons for rejecting the expert testimony based on those subsidiary findings. See *Vinal* v. *Contributory Retirement Appeal Bd.*, 13 Mass. App. Ct. 85, 92 (1982). See also *Ballard's Case*, 13 Mass. App. Ct. 1068, 1069 (1982). Compare *Blanchette* v. *Contributory Retirement Appeal Bd.*, *ante* 479, 483 n.2 (1985).

CRAB's decision denying the plaintiff's application fails to meet those requirements. Although CRAB adopted the hearing officer's findings of fact as its own, those findings "were not sufficiently specific to enable a reviewing court to determine whether the denial of the award . . . was proper or 'whether the board applied correct principles of law [citation omitted].'" *Ballard's Case*, 13 Mass. App. Ct. at 1068, and cases cited. Specifically, as there was no contrary medical testimony, the board's decision lacks explicit findings regarding the expert's credibility, as well as an assessment of his testimony concerning other potential causes of the decedent's death.[5] Nor do the findings point to any evidence of a nonmedical nature which would tend to contradict the expert's opinion on causation. Without such findings, this court has no way of knowing whether CRAB applied correct principles of law in determining whether the plaintiff failed to sustain her burden of proof on the question of causation.

We reach this conclusion despite apparently contrary language and results in some earlier cases. See, e.g., *Cataldo* v. *Contributory Retirement Appeal Bd.*, 343 Mass. 312 (1961); *Mullen* v. *Contributory Retirement Appeal Bd.*, 343 Mass. 641 (1962); *Woolfall's Case*, 13 Mass. App. Ct. 1070 (1982). Upon close examination, most of these cases exhibit some

---

[5] It is the board's role, rather than the court's, to assess the testimony. See *Maddocks* v. *Contributory Retirement Appeal Bd.*, 369 Mass. 488, 495 (1976). See also *McEwen's Case*, 369 Mass. 851, 853 (1976), and cases cited.

basis in the record which warrants rejection of the expert's testimony; for example, an absence of evidence regarding the deceased's activities at the time of his heart attack, *Cataldo*, 343 Mass. at 314; or non-medical evidence in the record which would warrant rejection of the expert testimony, *Woolfall's Case*, 13 Mass. App. Ct. at 1071-1072. In *Mullen* v. *Contributory Retirement Appeal Bd., supra*, the case most resembling the case at bar, the expert testimony was somewhat vague and conclusory, and the court held that "[a] conclusion was not required that the coronary attack was the result of present physical exertion or emotional excitement and strain." 343 Mass. at 644. Here, unlike *Mullen*, the testimony of the expert was clear, well-documented, and unequivocal. Compare *Sevigny's Case*, 337 Mass. 747, 751-752 (1958).

In these circumstances more complete findings on the issue of causation are required for appropriate judicial review. Compare *Maddocks* v. *Contributory Retirement Appeal Bd.*, 369 Mass. 488, 497 (1976). For the board's guidance, we point out that the plaintiff's burden of proof is to show causation by a probability or by "more than the possibility or chance" of the existence of a causal connection. *Tassinari's Case*, 9 Mass. App. Ct. 683, 686 (1980), and cases cited. It would be improper for CRAB to require that the plaintiff eliminate all other possible causes of the decedent's myocardial infarction. *Ibid.*

The judgment is reversed, and the case is to be remanded to the board for further and more complete findings on all the evidence; further hearings may be held in the board's discretion.

*So ordered.*