JOSEPH YEBBA vs. CONTRIBUTORY RETIREMENT APPEAL
BOARD & another[1]
(and three companion cases[2]).

Suffolk. December 5, 1989. - March 7, 1990.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Contributory Retirement Appeal Board. Public Employment*, Fire fighter,
Accidental disability retirement, Reinstatement of personnel. *Civil Ser-
vice*, Fire fighter, Reinstatement of personnel. *Words*, "Approval."

---

[1] Revere Retirement Board.

[2] Revere Retirement Board *vs.* Contributory Retirement Appeal Board
& another; Joseph Yebba *vs.* Retirement Board of Revere & another; City
of Revere *vs.* Civil Service Commission.

basis in the record before the board to support its determination that a medical panel's report submitted to the board had not been improperly influenced by the receipt of a private investigator's reports concerning the fire fighter's fitness to return to work. [839-841]

There was no merit to the contention by a fire fighter on accidental disability retirement that a medical panel's conclusion submitted to the Contributory Retirement Appeal Board (CRAB) that he was physically able to return to active service should be set aside because the panel had not been provided with the job description of a fire fighter where CRAB could, in rejecting the fire fighter's contention, properly rely on a sworn representation of the chairman of the medical panel that all members of the panel had extensive experience in evaluating fire fighters. [841-842]

CIVIL ACTIONS commenced in the Superior Court Department on April 9, 1985, April 11, 1985, November 14, 1985, and December 13, 1985, respectively.

The cases were consolidated for trial and were heard by *John C. Cratsley*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Countess C. Williams*, Assistant Attorney General, for Contributory Retirement Appeal Board & another.

*Gregory C. Demakis* for the plaintiff.

*Ira H. Zaleznik*, for Retirement Board of Revere & another, submitted a brief.

GREANEY, J. The case involves litigation between Joseph Yebba, a former Revere fire fighter, the city of Revere (Revere), its retirement board (board), and two State administrative agencies, the Contributory Retirement Appeal Board (CRAB) and the Civil Service Commission (commission), to decide Yebba's entitlement to accidental disability retirement benefits, the validity of an order concerning his return to active service, and the validity of a decision to discharge him. The lengthy factual and procedural background of the litigation takes some time to set forth.

On May 17, 1978, Yebba, a permanent fire fighter in the Revere fire department, slipped and fell while on duty at the station house incurring injuries to his neck, left shoulder, left

leg, and lower back. In June, 1978, Yebba applied to the board for accidental disability retirement benefits pursuant to G. L. c. 32, § 7 (1988 ed.). A medical panel convened to examine Yebba pursuant to that statute determined that he was totally disabled from performing the duties of a fire fighter as a result of his fall.

On December 21, 1978, while the board's decision on whether to award Yebba's requested benefits was still pending, Yebba was arrested and charged with two counts of Federal drug law violations. On January 11, 1979, the board granted Yebba disability retirement benefits. The mayor of Revere subsequently asked the board to suspend that decision pending the disposition of the criminal charges against Yebba. Those charges were resolved when Yebba pleaded guilty to one Federal drug violation in February, 1979, and was sentenced to four years in a Federal prison.

On April 6, 1979, following Yebba's guilty plea, Revere decided to discharge Yebba from the fire department on the basis of his criminal conviction. Yebba appealed this decision to the commission pursuant to G. L. c. 31, § 43 (1988 ed.).

On December 20, 1979, the board voted, based on Yebba's conviction, to reverse its January 11, 1979, decision granting him accidental disability retirement benefits. Yebba appealed that decision to CRAB. On September 11, 1980, CRAB conducted a hearing. CRAB reversed the decision of the board denying Yebba an accidental disability retirement, and remanded the case to the board with orders that Yebba's retirement benefits be reinstated. The board did not appeal this decision, and restored Yebba's benefits.

On April 23, 1981, the commission adopted its hearing officer's recommended decision and affirmed Revere's discharge of Yebba. Yebba appealed this decision to the Boston Municipal Court pursuant to G. L. c. 31, § 43 (1988 ed.). By decision dated February 11, 1983, and revised March 31, 1983, the court reversed the decision of the commission and ordered that Revere's discharge of Yebba be nullified. The Municipal Court judge reasoned that, because CRAB had

previously determined that Yebba had been retired for disability reasons, he was not on active duty, and therefore could not have been discharged when Revere purported to discharge him. Revere did not appeal this decision.

Following the judge's decision, the board requested that Yebba be reexamined by a second medical panel pursuant to G. L. c. 32, § 8 (2) (1988 ed.). The three-physician panel concluded that Yebba was physically able to return to work. In accordance with this determination, the board again revoked Yebba's disability retirement benefits. Yebba again appealed to CRAB. At the hearing on Yebba's appeal to CRAB, the parties entered into a stipulation providing for Yebba's examination by a third medical panel of three new physicians. Based on the stipulation, Yebba's appeal to CRAB was dismissed on October 31, 1983.

Yebba was notified that his examination by the third medical panel, consisting of Doctors W.J. Cater (chairman), Paul O'Brien, and Francis Creedon, would take place on February 3, 1984. Two days before the scheduled examination, on February 1, 1984, counsel for the board mailed to Dr. Cater copies of a private investigator's reports pertaining to Yebba's physical condition. The fact that the same reports had been furnished to the second medical panel was one of the reasons for Yebba's earlier appeal from that panel's conclusion.

The third medical panel examined Yebba on February 3, 1984, and, by letter dated that same day, informed the board of the panel's unanimous conclusion that Yebba was fit to return to work. Based on the conclusion of the third panel, the board conducted another hearing on April 25, 1984. Introduced as an exhibit at that hearing was a letter from the chief of the Revere fire department. In his letter, the chief expressed his opposition to any decision to return Yebba to service on the ground that Yebba's serious criminal conviction would negatively affect morale in the department. On June 27, 1984, the board voted to terminate Yebba's disability retirement benefits and to restore him to active service. Yebba was returned to the fire department payroll, but the

chief refused to assign him to a work shift. Yebba appealed the board's decision to CRAB.

While Yebba's latest CRAB appeal was pending, Revere held a hearing to determine whether he should be discharged because of his conviction. By letter dated August 3, 1984, the mayor informed Yebba that Revere had discharged him. Yebba appealed his discharge to the commission.

After Yebba's August 3, 1984, discharge, a hearing was held on his appeal to CRAB of the board's June 27 decision terminating his disability retirement benefits and restoring him to active service. At this hearing, Yebba argued that the third medical panel's determination of his fitness to return to work was improperly influenced by the panel's receipt of the investigator's reports. Yebba also contended that the board's failure to provide the third medical panel with a fire fighter's job description further prejudiced his interests. In his recommended decision, the hearing officer concluded that the panel had not received the investigator's reports until after it had examined Yebba and issued its opinion as to his physical condition.[3] Thus, the hearing officer recommended that CRAB affirm the board's determination that Yebba was fit to return to work, and that CRAB remand the case to the board to determine whether Yebba's disability retirement benefits should be reduced pursuant to G. L. c. 32, § 8 (3) (1988 ed.). However, the hearing officer disagreed with the board's decision to restore Yebba to his job. The hearing officer concluded that the statute governing Yebba's restoration to active service, G. L. c. 32, § 8 (2), granted authority to reinstate Yebba only "with the approval of the head of any department in which a vacancy exists[.]" *Id.* Because the fire chief had not given his approval, the hearing officer concluded that the board lacked authority to restore Yebba to active service. On March 11, 1985, CRAB adopted the hearing officer's recommendations in full.

---

[3]Neither the hearing officer's recommended decision nor CRAB's final decision addressed Yebba's argument regarding the failure to furnish the third medical panel with a fire fighter's job description.

On October 26, 1984, a hearing was held before the commission on Yebba's appeal of his August 3, 1984, discharge. The hearing officer in this case reached the same conclusion as had his CRAB counterpart — that under G. L. c. 32, § 8 (2), Yebba could not be restored to active service without first receiving department head approval. Since no such approval had been given, Yebba remained on disability retirement status. Also, the hearing officer concluded that the earlier (unappealed) decision of the Boston Municipal Court (that Yebba, as a permanent and tenured civil service employee on retirement status, could not be discharged) prevented Revere from discharging him. Accordingly, the hearing officer recommended that the commission vacate Yebba's discharge. On August 22, 1985, the commission voted to adopt the hearing officer's recommendation.

At this point, the parties took all of their disputes before the Superior Court by filing four related lawsuits. In the first action, Yebba appealed from those portions of the March 11, 1985, decision of CRAB which concluded (a) that the third medical panel had not received the private investigator's report prior to issuing its opinion, and (b) that the failure of the board to furnish the third medical panel with a fire fighter's job description did not prejudice Yebba. In the second action, the board appealed that portion of the CRAB decision which held that Yebba could not be restored to active service without department head approval. The board maintained that Yebba had not raised that issue before it or CRAB, and, as a result, that the issue had been waived. If the issue had not been waived, the board maintained that CRAB erred in considering it sua sponte. In the third action Yebba filed a complaint seeking relief in the nature of mandamus requesting that the court enforce against the board and the city the commission's decision nullifying his discharge. In the fourth action, Revere appealed from the commission's decision vacating Yebba's discharge. All four actions were consolidated for hearing and decision.

A judge in the Superior Court considered the actions, essentially on the records that had been compiled before the

administrative agencies. The judge entered a memorandum of decision in which he concluded that G. L. c. 32, § 8 (2), required department head approval before a permanent employee on disability retirement could be returned to active service and that that issue had been properly raised before, and considered by, CRAB. Based on these conclusions, the judge ordered the entry of a judgment dismissing the board's appeal from CRAB's decision, dismissing Revere's appeal from the commission's decision, and allowing Yebba's request for an order vacating his discharge. The judge also concluded that CRAB's conclusion that the third medical panel had not received the investigator's reports prior to issuing its opinion was not supported by "substantial evidence" and that the report prejudiced Yebba's rights.[4] The judge set aside CRAB's decision and ordered the board to restore Yebba to retirement status and to pay him past due benefits with interest. A single judgment was entered incorporating the judge's various orders. The Revere parties (namely the city and the board) took timely appeals from the portions of the judgment adverse to their position in the various cases. CRAB took a timely appeal from the portion of the judgment concerning the medical panel's receipt of the private investigator's reports. We transferred the appeals to this court on our own motion.

1. This case also involves the proper interpretation of G. L. c. 32, § 8 (2), and G. L. c. 31, § 39. Like his counterpart in the case of *Milton* v. *Personnel Adm'r, Dep't of Personnel Admin., ante* 818 (1990), the judge concluded that G. L. c. 32, § 8 (2), required department head approval prior to the reinstatement to active service of a civil service disability retiree like Yebba. This case has an odd procedural twist, however. The State agencies involved, CRAB and the commission, both arrived at this same conclusion in their de-

---

[4]The judge also agreed with Yebba's contention that the third medical panel was to receive a description of the duties of a Revere fire fighter. The judge did not directly deal with the argument that the omission of the description required reversal of the panel's determination that Yebba was physically able to return to work.

cisions. Consequently, they argued that position before the judge and took no issue with him when he agreed with them. Subsequent to the entry of judgment, CRAB and the commission reversed their positions. They now have filed a joint brief in this court arguing that department head approval is not required.[5]

No one makes any argument about the propriety of this about face. We do not dwell on it either. The joint brief filed on behalf of CRAB and the commission in this case, and the brief filed on behalf of the personnel administrator in the *Milton* case, *supra*, were prepared by the same assistant attorney general. The briefs in both cases raise precisely identical arguments. For the reasons stated in the *Milton* decision, the arguments that department head approval is not required cannot prevail in this case.

2. The board and Revere argue that the department head approval issue involved in the interpretation of G. L. c. 32, § 8 (2), was not properly before the judge because (1) Yebba failed to raise the issue before the board and CRAB, thereby waiving it, and (2) CRAB erred in raising the issue sua sponte without first reopening the hearing to afford them an opportunity to litigate whether department head approval actually had been granted. Even assuming some procedural impropriety in the CRAB proceedings, however, the Revere parties had sufficient opportunity to litigate the department head approval issue before the commission.[6] Thus, any denial to the board and Revere of the opportunity to litigate the department head approval issue before CRAB was remedied by the subsequent opportunity to do so before the commis-

---

[5]The change in position resulted from a joint decision of the division of public employee retirement administration and the Department of Personnel Administration to change their interpretation of G. L. c. 32, § 8 (2), to do away with the department head approval requirement for civil service disability retirees seeking reinstatement. The State agencies' new position was announced to local retirement boards by a memorandum dated June 1, 1988.

[6]The record indicates that Yebba raised the issue before the commission, and that Revere responded. Furthermore, counsel for the parties was the same in both the CRAB and commission proceedings.

sion. See G. L. c. 30A, § 10 (1988 ed.) ("[w]hen a party to an adjudicatory proceeding has the opportunity . . . to obtain more than one agency hearing on the same question, whether before the same agency or before different agencies, it shall be sufficient if the last hearing available to the party complies with the requirements of this chapter, and the earlier hearings need not so comply"). The issue, therefore, was fully litigated before the commission and properly brought before the Superior Court.

3. We have held today in the *Milton* decision, *supra* at 824-825, that, under G. L. c. 32, § 8 (2), a civil service disability retiree may not be reinstated without first having received department head approval, and that nothing in G. L. c. 31, § 39, compels a contrary result. That conclusion disposes of all the statutory interpretation issues before us in this case except for one. We turn our attention to that remaining issue. The board and Revere argue that, even if some degree of department head approval is statutorily required, the scope of that approval is merely ministerial and not discretionary. According to this argument, the department head "could dictate time of restoration, and duty functions on the part of the employee, but would be powerless to veto the restoration of an employee on substantive grounds."

This contention rests on the presence of department head approval language in the first paragraph of G. L. c. 32, § 8 (2), but not in the second paragraph thereof. From this fact the board and Revere conclude that the approval power referred to cannot be substantive, because "[i]t would be anom[a]lous for the statute to provide for a substantive veto power belonging to a department head only when a vacancy existed in the department."

In substance, this argument is identical to that raised by the personnel administrator in the *Milton* case. The only difference is the conclusion drawn from this perceived "anomaly"; while the administrator concluded in *Milton* that the first paragraph cannot apply to civil service employees, the board and Revere here concede that the paragraph does apply to civil service employees, but suggest that the "ap-

proval" it requires is merely a ministerial function. We reject the arguments for the same reasons that we rejected similar arguments in the *Milton* case.[7]

4. Yebba and CRAB dispute whether the third medical panel was improperly influenced by the receipt of a private investigator's reports concerning Yebba's fitness to return to work. It is undisputed that the board hired a private investigator to compile reports on Yebba, and sent a copy of the reports to Dr. Cater, the chairman of the third medical panel, by letter dated February 1, 1984. There is also no dispute that the investigator's reports were sent without Yebba's consent and were received at some point in time by Dr. Cater. The medical panel's unanimous conclusion that Yebba was no longer disabled from performing the duties of a fire fighter is dated February 3, 1984, two days after the date of the letter transmitting the reports.

Faced with these facts, the hearing officer in Yebba's most recent appeal to CRAB found that the medical panel had not received the investigator's reports until after it had examined Yebba and dictated its conclusion. This finding rested on (1) a sworn affidavit from Dr. Cater, the chairman of the medical panel, and the only member of the panel to whom the investigator's reports were mailed, stating that the reports "had absolutely no influence whatsoever" on the panel because the reports did not arrive until after the examination of Yebba and the dictation of the panel's conclusions, and on (2) a representation by Yebba's attorney that Dr. O'Brien, another member of the medical panel, told the attorney that

---

[7]The board and Revere also contend that the judge's interpretation of G. L. c. 32, § 8 (2), and G. L. c. 31, § 39, which we affirm, prohibits Revere from reinstating Yebba and then immediately commencing discharge proceedings against him. Our cases make clear that discharge proceedings may be commenced against a civil service employee immediately following his reinstatement, or at any time thereafter. See *Horrigan* v. *Mayor of Pittsfield*, 298 Mass. 492, 496 (1937). We emphasize that nothing in our holdings in this case, or in the *Milton* case, prohibits the immediate institution of discharge proceedings against Yebba, if he is reinstated.

he had not seen or discussed the investigator's reports.[8] Because the hearing officer concluded that the panel had not received the reports prior to issuing its opinion on Yebba's physical condition, he deemed it unnecessary to determine whether the reports' contents were in fact prejudicial to Yebba. CRAB adopted the recommended decision of the hearing officer.

The judge set aside CRAB's finding on the issue, concluding that it was not supported by "substantial evidence." See G. L. c. 30A, § 14 (7) (e) (1988 ed.). The judge reasoned that the sworn affidavit of only one of the three members of the medical panel[9] was not sufficient to sustain CRAB's determination that the panel had not received the investigator's reports until after it had reduced its conclusion to writing. The judge also concluded that the reports prejudiced Yebba and therefore required reversal of CRAB's decision upholding the board's finding that he was physically capable of returning to active service.

We disagree with the judge's determination, because we find a reasonable basis in the record before CRAB to support its determination that the report of the medical panel had not been influenced by the investigator's reports. In his affidavit, Dr. Cater unequivocally states that the reports "had absolutely no influence whatsoever on the Medical Panel" because the panel did not receive them until after examining Yebba and deeming him physically fit to return to duty. The affidavit was signed and sworn to, thereby subjecting Dr. Cater to a possible perjury charge for any knowing falsehood contained therein. In addition, there is no indication that Dr. Cater would have any incentive to lie and thereby damage his professional reputation. Additionally, Dr. Cater was the only member of the medical panel to receive the reports. His

_____

[8]The third member of the panel, Dr. Creedon, did not respond to Yebba's request that Dr. Creedon state whether or not he had seen or been influenced by the investigator's reports.

[9]The judge disregarded the oral statement of Dr. O'Brien to Yebba's attorney on the basis that the statement was not made under pain of perjury.

sworn statement supports a logical inference (which the hearing officer appears to have drawn) that the other two physicians who served on the panel had not seen the reports. That inference is corroborated by the representation made by Yebba's counsel about his conversation with Dr. O'Brien. Finally, all three physicians signed a "Certificate of Medical Panel," which states the following: "We hereby certify that we have examined the retired member and that our findings were arrived at independently of each other and free of undue influence of any kind." This certification provides additional indication of the integrity of the medical panel's report.[10] CRAB correctly accepted the hearing officer's finding on the point and, consequently, correctly determined that it was unnecessary to consider Yebba's contentions about the reports containing incorrect and prejudicial information.

5. Yebba also contends that the third medical panel's conclusion should be set aside because the panel had not been provided with the job description of a fire fighter. The judge did not consider the merits of the argument but did conclude that Yebba and the board had agreed to submit a job description to the panel. The contention will not help Yebba.

There is nothing in the record which would sufficiently support a conclusion that Yebba and the board had stipulated to furnish such a description. There is nothing in the stipulation executed between the parties on the point,[11] and no legal requirement that a medical panel reexamining a dis-

---

[10]In his objections to CRAB's recommended decision, and again before this court, Yebba argues that certain language contained in the medical panel's conclusion supports the inference that the panel members had seen the investigator's reports. Specifically, Yebba points to the references made in the panel's conclusion to "reports surrounding this examination," and to Yebba's stated ability to "shop and place the bags of groceries in his car." Yebba contends that the use of the plural (reports) in the first passage can only mean the investigator's reports and that the use of the definite article (*the* bags) rather than an indefinite article (*a* bag, or *some* bags) indicates familiarity with the investigator's reports, which included surveillance of Yebba shopping for groceries and loading bags into his automobile. These semantic arguments are of little persuasive value, especially when viewed against the contrary statements of all the examining physicians.

[11]The stipulation reads as follows:

ability retiree be furnished with a job description. Compare 840 Code Mass. Regs. § 10.08 (6)(b) (1989), with 840 Code Mass. Regs. § 10.16 (2) (1989). In any event, the issue is of little practical value to Yebba because Dr. Cater stated in his affidavit that "all members of the medical panel that examined Mr. Yebba had extensive experience treating firefighters and also extensive experience in evaluating firefighters as members of retirement panels in the past." CRAB could properly rely on this sworn representation in rejecting Yebba's argument.

6. We summarize Yebba's present employment status based on what has been said above. Because department head approval has not been granted, Yebba has not been restored to active service, and consequently has not been properly discharged from his position as a Revere fire fighter. Yebba remains on disability retirement status. However, as determined by the third medical panel, Yebba is physically fit to return to service. Accordingly, while he remains on retirement status the board is authorized by G. L. c. 32, § 8 (3), to decide whether Yebba's disability benefits should be curtailed or eliminated because of his present ability to engage in gainful employment.

7. The two paragraphs constituting part 4 of the judgment are vacated. In their place is to be substituted the following: "4. It has not been shown that CRAB erred in its decision dated March 11, 1985. Accordingly, Yebba's appeal from that decision (Suffolk Superior Court case no. 75090) is dismissed." As so modified, the judgment is affirmed.

*So ordered.*

---

"Now come the parties in the above-entitled matter and agree and stipulate to the formation of a new medical panel for the purposes of examining [Yebba] under G. L. c. 32, § 8.

"The parties shall designate their own physicians and the third physician to be appointed by the regional medical panel.

"The parties request that [the doctors who served on the second medical panel] not be appointed to the medical panel."