NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-1148                                      Appeals Court

OBIDIYA KALU  vs.  BOSTON RETIREMENT BOARD & another.[1]


No. 15-P-1148.

Norfolk.     May 4, 2016. - October 14, 2016.

Present:  Katzmann, Carhart, & Sullivan, JJ.[2]


Contributory Retirement Appeal Board.  Public Employment,
     Accidental disability retirement, Retirement.  Retirement.
     Practice, Civil, Appeal.  Administrative Law, Decision,
     Judicial review, Official notice, Substantial evidence.



     Civil action commenced in the Superior Court Department on
July 21, 2014.

     The case was heard by Peter B. Krupp, J., on motions for
judgment on the pleadings.


     Charles E. Berg for the plaintiff.
     Elizabeth Kaplan, Assistant Attorney General, for
Contributory Retirement Appeal Board.
     Edward H. McKenna for Boston Retirement Board.


_____

     [1] Contributory Retirement Appeal Board (CRAB).

     [2] Justice Katzmann participated in the deliberation on this
case prior to his resignation.

SULLIVAN, J. The plaintiff, Obidiya Kalu, appeals from a Superior Court judgment affirming a decision of the Contributory Retirement Appeal Board (CRAB). CRAB had determined that while Kalu's appeal from the denial of accidental disability retirement benefits by the Boston Retirement Board (BRB) was timely, she was not entitled to those benefits.[3] We conclude that the appeal was timely, but we vacate the judgment affirming the denial of benefits and remand the case for further proceedings.

1. Timeliness of appeal from retirement board decision. The first issue presented is whether the fifteen-day appeal period from an adverse decision of a retirement board set forth in G. L. c. 32, § 16(4), begins to run when a represented applicant receives proper notice of the retirement board's decision, or when an applicant's legal counsel receives such notice. We defer to CRAB's reasonable interpretation of its enabling statute and conclude that the appeal period begins to run when notice is received by the applicant's counsel.

After a hearing, an administrative magistrate of the Division of Administrative Law Appeals (DALA) made factual

---

[3] The BRB denied Kalu's application for accidental disability retirement benefits. An administrative magistrate of the Division of Administrative Law Appeals (DALA) found that the appeal was timely, and awarded benefits. CRAB agreed on the procedural issue, but reversed the DALA magistrate's award of benefits.

findings on the issue of when notice was received, and by whom, all of which were adopted by CRAB. "We accept the facts found by CRAB when there is substantial evidence to support them, and also accept the reasonable inferences CRAB draws from the facts." Rockett v. State Bd. of Retirement, 77 Mass. App. Ct. 434, 438 (2010) (citation omitted). We summarize the pertinent findings, all of which were supported by substantial evidence.

Attorney James Ellis filed the claim for accidental disability retirement benefits on Kalu's behalf on December 30, 2006. In October, 2008, the BRB held a hearing on Kalu's claim. Kalu was represented by Attorney Dennis Ellis, who is a member of a different law firm, at the hearing before the BRB. On June 23, 2009, the BRB denied Kalu's application, and subsequently sent a decision letter to Kalu's home address via certified mail. The decision letter stated that an appeal to CRAB must be filed "within 15 days of receipt of this notice." There was no evidence in the record that the decision letter was sent to (or received by) either Attorney Ellis.

Kalu, due to her son's death in Nigeria, went to Nigeria from June until August of 2009, and had arranged for her daughter to collect her mail during this period. The daughter signed for the BRB decision letter on June 26, 2009. Contrary to her mother's directions, Kalu's daughter threw away some of

the mail, including the decision letter.[4] Kalu, who retrieved

her mail from her daughter promptly upon return, did not see the

decision letter, and her daughter did not mention it to her.[5]

Beginning in November, 2008, Attorney James Ellis's firm

had made repeated inquiries to the BRB concerning any decision

on Kalu's application. The BRB promised him (repeatedly) that

it would provide him a copy, but did not. Attorney James Ellis

did not receive a copy of the decision until November of 2009.

James Ellis mailed Kalu's notice of appeal of the BRB's adverse

determination to CRAB on November 12, 2009.[6]

---

[4] The daughter also threw away two mailed workers'
compensation checks.

[5] The BRB argued to DALA and CRAB, and continues to argue on
appeal, that Kalu had not gone to Africa, that it was her
signature on the certified mail delivery receipt, and that the
DALA magistrate erred in crediting her testimony without
corroboration. Matters of credibility and weight are for DALA,
see Murphy v. Contributory Retirement Appeal Bd., 463 Mass. 333,
336 (2012), and ultimately CRAB, see id. at 336-337 & 344-345,
neither of which erred in crediting Kalu's testimony.

[6] At various points in this appeal, the BRB claimed that it
sent the decision to Attorney Dennis Ellis in June of 2009,
because he was trial counsel. The BRB has also argued that it
should be presumed that it sent the decision to Attorney Dennis
Ellis because it was sent to Kalu. However, BRB offered no
witnesses at the hearing. Copies of the certified mailing to
Kalu and the signed delivery receipt were admitted in evidence,
but there were no exhibits showing that the notice of denial was
sent to Attorney Dennis Ellis. Neither the DALA magistrate nor
CRAB credited the claim that the notice was sent to Attorney
Dennis Ellis. The BRB argues on appeal that only Attorney
Dennis Ellis was entitled to notice because he alone appeared at
the hearing on this matter. Because there is no evidence of

The BRB argued that Kalu's appeal was untimely because it was not filed within fifteen days of June 26, 2009, the date of signature on the certified mail receipt. The DALA magistrate concluded, however, that the fifteen-day appeal period "does not come into play until the appropriate person has received notice of the board's decision." Because Kalu was represented by legal counsel, the magistrate reasoned, "it was her legal counsel's receipt of [the decision letter] that triggered the fifteen day filing period and not . . . Kalu's receipt of that letter as received by her daughter on June 26, 2009." CRAB likewise concluded:

> "[T]he appeal to DALA was filed 'within fifteen days of notification of such action or decision of the retirement board,' as required by G. L. c. 32, § 16(4). Under § 16(4), notification must be made to the 'person' who is 'aggrieved' by the decision. Where Kalu was represented by counsel, notice to her counsel was, in effect, notice to her, and commenced the fifteen-day appeal window. While it was proper to send notice to Kalu as the 'person . . . aggrieved' under § 16(4), we agree with the magistrate that, where a retirement board is aware that a party is represented by counsel, notice also must be sent to counsel of record. A represented party is justified in expecting that, after the commencement of a proceeding and the appearance of counsel, copies of all notices will be sent to her attorney."

The question before us is whether CRAB erred as a matter of law in construing G. L. c. 32, § 16(4), as amended through St. 1996, c. 306, § 21A, which provides in pertinent part:

---

notice as to either Attorney Ellis, the distinction is not material.

> "[A]ny person . . . aggrieved by any action taken or decision of the retirement board . . . may appeal to [CRAB] by filing therewith a claim in writing <u>within fifteen days of notification of such action or decision</u> of the retirement board" (emphasis supplied).

See <u>Fender</u> v. <u>Contributory Retirement Appeal Bd.</u>, 72 Mass. App. Ct. 755, 760 (2008) (CRAB decision reviewable for error of law).[7]

"As with any statute, we review questions concerning the meaning of an agency's enabling statute de novo. If the meaning of a term is clear in the plain language of a statute, we give effect to that language as the clearest expression of the Legislature's purpose. If, however, the statutory language is sufficiently ambiguous to support multiple, rational interpretations, we look to the cause of [the statute's] enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." <u>Peterborough Oil Co., LLC</u> v. <u>Department of Envtl. Protection</u>, 474 Mass. 443, 448 (2016) (citations and quotations omitted). Additionally, "[w]hile the duty of statutory interpretation is for the courts . . . an

---

[7] A different provision of G. L. c. 32, § 16(4), as amended by St. 1990, c. 331, requires an appeal to CRAB from a DALA decision to be filed "within fifteen days <u>after such decision</u>" (emphasis supplied). We express no opinion regarding notice requirements under that provision. We also express no opinion whether Kalu, if she had been unrepresented by counsel, would be considered to have received statutory "notification" in the circumstances. Cf. <u>Anderson</u> v. <u>Billerica</u>, 309 Mass. 516, 516-518 (1941); <u>Commonwealth</u> v. <u>Crosscup</u>, 369 Mass. 228, 239-240 (1975).

administrative agency's interpretation of a statute within its charge is accorded weight and deference. . . . Where the [agency's] statutory interpretation is reasonable . . . the court should not supplant [its] judgment." Id. at 449 (quotation omitted).

The statute does not define "notification" (or any variant of the term) and is ambiguous with respect to who must be notified in the case of a represented applicant. See G. L. c. 32, §§ 1, 16; Biogen IDEC MA, Inc. v. Treasurer & Receiver Gen., 454 Mass. 174, 188 (2009) (undefined language in statute is ambiguous where "susceptible of multiple, rational interpretations"). We therefore look to the intent of the statute, and any interpretive regulations, which also have the force of law. See Entergy Nuclear Generation Co. v. Department of Envtl. Protection, 459 Mass. 319, 329 (2011). See also Global NAPs, Inc. v. Awiszus, 457 Mass. 489, 496 (2010) ("[A] properly promulgated regulation has the force of law and must be given the same deference accorded to a statute").

The Public Employee Retirement Administration Commission (PERAC) promulgates regulations governing disability retirement proceedings before local retirement boards. See 840 Code Mass. Regs. §§ 10.00.[8] These include a section specifically

---

[8] The applicable regulations are those in effect at the time of Kalu's application and the BRB's decision. See Middleborough

authorizing representation by counsel before the local board, and requiring counsel to file a written appearance providing counsel's name, address, and telephone number to the board. See 840 Code. Mass. Regs. § 10.05(3) (1998).[9] Counsel's name, address, and telephone number are supplied for a reason. "Indeed, we may presume that a party who has retained counsel . . . has done so precisely because that party does not wish to assume personal responsibility for complying with the various procedural requirements of the [statute]. Moreover, the appeal period . . . is very short; consequently, under [a] statutory construction [where the appeal period begins upon notice to the applicant], a party who receives notice of the . . . decision must promptly forward such notice to his or her counsel to avoid forfeiting the right to appeal. It is extremely unlikely that the [L]egislature intended to impose such a burden on a party who has retained counsel for the specific purpose of

---

v. Housing Appeals Comm., 449 Mass. 514, 517 n.8 (2007). No relevant changes to those regulations occurred between the time of application and decision. See Figueroa v. Director of Dept. of Labor & Workforce Dev., 54 Mass. App. Ct. 64, 69-72 & n.11 (2002). The regulations were most recently revised in March of 2016, but we do not discern (and the parties do not raise) any differences material to the issues before us in this appeal.

[9] If benefits are denied, notification to the parties is mandatory; "the board shall notify [PERAC] and notice of the decision and right to appeal shall be sent to all parties [within three days of the decision]." 840 Code. Mass. Regs. § 10.13(1)(b) (2000). See id. at § 10.13(3)(a) (2008). (See now 840 Code Mass. Regs. § 10.13[1][c] [2016].)

representing the party on such matters." Schreck v. Stamford, 250 Conn. 592, 598 (1999) (ten-day appeal period for workers' compensation claim begins to run when counsel is sent notice).

CRAB's construction of the enabling statute is also consistent with the practice in other fora,[10] and promotes the purposes of the statute. "It shall be the policy of the retirement board to make every reasonable effort to assist retirement system members to exercise all rights and obtain all benefits to which entitled and as authorized by the laws governing ordinary and accidental disability retirement, while protecting the retirement system and the public against claims and payments for disability retirement not authorized by law." 840 Code. Mass. Regs. § 10.02 (1998). Notifying counsel of the disposition of an application for benefits is essential to the preservation of the applicant's right to obtain benefits, where warranted, and has no deleterious consequences in the event that the applicant is not entitled to benefits under applicable law.

---

[10] See Mass.R.Civ.P. 5(b), 365 Mass. 745 (1974) (requiring service on counsel); CRAB Standing Order 2008-1 2(f) (as amended June 12, 2009) (requiring service on authorized representative). Unlike the Massachusetts Rules of Civil Procedure and the CRAB Standing Order, the PERAC regulations do not contain a provision that explicitly requires service on authorized representatives. Given the importance of adequate notice for both retirement boards and retirement system members across the Commonwealth, regulatory clarity would be preferable to case-specific adjudication.

CRAB's determination that the appeal period began to run when counsel received notice is reasonable, and is entitled to deference. Kalu's appeal was timely because it was filed within fifteen days of notice to counsel.

2. <u>Entitlement to benefits</u>. "It is well established that judicial review of a CRAB decision pursuant to G. L. c. 30A, § 14, is narrow. It is not our province to determine whether the CRAB decision is based on the weight of the evidence, nor may we substitute our judgment for that of CRAB. We set aside a decision by CRAB only where it is legally erroneous or unsupported by substantial evidence." <u>Murphy</u> v. <u>Contributory Retirement Appeal Bd</u>., 463 Mass. 333, 344 (2012) (citations and quotations omitted). We conclude that there was legal error in the CRAB decision and that certain findings were not supported by substantial evidence, and we remand for further proceedings.

a. <u>Background</u>. We briefly summarize those findings and conclusions on which the DALA magistrate and CRAB relied, leaving further facts for later discussion.

Kalu was a teacher of elementary school age special needs students in the Boston Public Schools. At the time of the accident leading to her claim, she had preexisting osteoarthritis and degenerative changes in her knees. She had undergone an arthroscopic procedure on both knees in 1994, some eleven years before the events in question, and returned to work

thereafter.  On March 21, 2005, Kalu, who was posting materials to a bulletin board in her classroom, hit her right knee against a metal chair, twisted, and fell.  She immediately saw the school nurse.  While the nurse was escorting her to her car, she fell again and hit her right knee on her car.  She was then transported to the emergency room for treatment.

Kalu was out of work for a period of time, and elected not to have arthroscopic surgery on the knee.  She returned to work in September of 2005 at a different school.  She was assigned a third-grade classroom in the basement.  She received a teacher evaluation with an over-all recommendation of "Needs Improvement" in November, 2005.

While breaking up a fight between some of her students in December, 2005, Kalu fell again.  After further evaluation, she had a surgical arthroscopy and partial meniscectomy on her right knee on April 21, 2006.  After a period of further review and physical therapy, Kalu applied for accidental disability retirement benefits on December 30, 2006, based on the March 21, 2005, injury to her right knee.  Kalu claimed that her right knee pain and other symptoms ("popping" and giving way of the knee) rendered her unable to do the sustained standing and walking that was required to perform her job as a teacher.

Between the time of her 2005 injury and the adjudication of her claim, Kalu was seen by several physicians who were either

treating her or retained to perform a review in connection with her application for workers' compensation benefits. Additionally, in accordance with the retirement statute, see G. L. c. 32, § 6(3), a regional medical panel of three doctors was convened. The panel doctors answered separate certificates stating that Kalu's knee condition "might be" the natural and proximate result of the March 21, 2005, incident.[11] These evaluations were sufficient to support the application for benefits, see G. L. c. 32, § 7(1); Kelley v. Contributory Retirement Appeal Bd., 341 Mass. 611, 616-617 (1961), and the DALA magistrate so found.

The opinions of the other doctors were in conflict. The DALA magistrate relied on the opinion of Kalu's surgeon, who concluded that the 2005 accident aggravated her preexisting osteoarthritis, that the aggravation continued even after the repair of her torn right meniscus, and that she could no longer perform the essential functions of her job. The magistrate also relied on the opinion of Dr. Bulman, an independent medical examiner, who stated that "her precipitous change in right knee symptomatology" was due to the "loss of the meniscus due to the

---

[11] The medical panel may not offer an unqualified opinion on causation, because the ultimate conclusion on causation is for CRAB based on the medical and nonmedical evidence; hence the use of the term "might." See Lisbon v. Contributory Retirement Appeal Bd., 41 Mass. App. Ct. 246, 254-255 (1996); Narducci v. Contributory Retirement Appeal Bd., 68 Mass. App. Ct. 127, 134-135 (2007).

tear" incurred in 2005, which in his view hastened further degeneration of the preexisting osteoarthritis condition. The magistrate did not credit Dr. Shea, who concluded that Kalu had been disabled from work for the periods March 21 to September, 2005, and again from December, 2005, to November 1, 2006, but that the surgery and physical therapy had successfully resolved the meniscal tear. Dr. Shea opined that any other symptoms she suffered were due solely to the natural progression of the preexisting osteoarthritis, and not the aggravation of a preexisting condition.

The DALA magistrate concluded that the March, 2005, classroom injury aggravated the preexisting osteoarthritis, and was "the primary or natural and proximate cause" of the disability, citing Noone v. Contributory Retirement Appeal Bd., 34 Mass. App. Ct. 756, 761 (1993). This determination was based on the corollary finding that as a special needs elementary school teacher, Kalu needed to be able to stand and move about her classroom for sustained periods of time. Based on Kalu's unrebutted and uncontested testimony, the DALA magistrate found that she was unable to stand or walk for those periods of time (i.e., ten minutes or more) necessary to teach her eight year old special needs students. The city of Boston certified that she was unable to perform the essential functions of the job, and that there was no reasonable accommodation to be made. The

DALA magistrate therefore concluded that Kalu was disabled from her usual occupation as a special needs classroom teacher.

CRAB adopted the DALA magistrate's subsidiary factual findings, with five modifications. CRAB ultimately concluded that Kalu failed to prove that her knee condition was caused by the 2005 fall in the classroom, rather than her preexisting osteoarthritis or the fall that took place later that day in the parking lot.[12] CRAB also concluded that Kalu had failed to prove that standing for more than ten minutes at a time was an essential function of her job, and that she failed to show that she could not perform her job with reasonable accommodation. CRAB also concluded that the surgery addressed all symptoms associated with the fall, and that her injury was not permanent.

b. Standard of review. "CRAB is not bound by the DALA administrative magistrate's recommendation. Nonetheless, all subsidiary findings made by the magistrate are entitled to some deference by CRAB, and those findings that are based on credibility determinations by the magistrate are entitled to substantial deference. To the extent that CRAB rejects the magistrate's resolution of credibility questions, CRAB's decision should contain a considered articulation of the reasons underlying that rejection." Murphy v. Contributory Retirement

_____

[12] For purposes of our review we rely on the facts as found by CRAB, to the extent that they are supported by substantial evidence.

Appeal Bd., 463 Mass. at 336-337 (citations and quotations omitted).

An applicant for accidental disability retirement benefits "has the burden of proving that [her] disability was causally related to the personal injury sustained in the course of [her] employment." Retirement Bd. of Brookline v. Contributory Retirement Appeal Bd., 33 Mass. App. Ct. 478, 481 (1992), citing Blanchette v. Contributory Retirement Appeal Bd., 20 Mass. App. Ct. 479, 482-483 (1985). "The medical panel's certification that the claimant's disability might be causally related to the [work-related] injury 'is not conclusive of the ultimate fact of causal connection but stands only as some evidence on the issue. . . . The final determination in this case whether causation was proved was reserved to [CRAB], based on the facts found and all the underlying evidence, including both the medical and non-medical facts.'" Ibid., quoting from Blanchette v. Contributory Retirement Appeal Bd., supra at 483.

c. Medical records. The first reason offered by CRAB for its conclusion that Kalu's proof of causation was lacking was that she had "failed to provide any records or history concerning her treatment and surgeries prior to her fall in 2005," and that "all but one or two of the ten physicians . . . appear to have been unaware of this prior history and based their opinions on causation on the assumption that her

osteoarthritis had not been symptomatic prior to her fall at work."  In the absence of such records, CRAB concluded that it was "impossible to know whether, for instance, any meniscus [had been] removed or other conditions noted that would have affected the progression of Kalu's arthritis."

The administrative record contains the medical records submitted by Kalu in connection with her application.  The application form, which was provided and approved by PERAC, see 840 Code Mass. Regs. § 10.06 (1998), requested only five years' worth of medical records.[13]  See 840 Code Mass. Regs. § 10.06(1)(g) (requiring applicant to submit records of treatment for injury and medical records for the five years prior to the application).  Although it was argued before DALA that Kalu had not been forthright about her medical history,[14]

---

[13] PERAC has provided a printed application form in which claimants are required to identify all providers who have treated them for their condition in the last five years.  Kalu listed all providers, otherwise answered the questions on the form, and later submitted to the BRB the medical records of the listed providers.

[14] The BRB argued in its prehearing memorandum to the DALA magistrate that "the evidence in the record indicates that [Kalu] has not been completely forthcoming and honest concerning the extent of her pre-existing right knee conditions and/or any previous knee injuries.  In addition, it is apparent that [Kalu] has not been completely forthcoming and honest about previous surgeries to her knees."

At the DALA hearing, when asked if she had had previous surgery, Kalu answered "no," but when asked by the DALA magistrate about the arthroscopic procedure in 1994, she

the BRB did not request the treatment records for her arthroscopic procedure eleven years before her accident, thus leaving the record bare of further medical substantiation of its contentions.  Under the PERAC regulations, the BRB was required to obtain the additional records.  See 840 Code Mass. Regs. § 10.09(1) (1998) (retirement boards "shall obtain any pertinent information known to exist without regard to the five year time period[]" and "shall conduct such investigation as may be necessary to determine the facts").  The absence of medical records other than those submitted by Kalu to the BRB -- in full conformity with the approved application procedures -- was not raised or argued before DALA.  The DALA magistrate decided the case on the basis of the facts presented.

CRAB may seek clarification of evidentiary matters not adequately addressed by the parties before DALA.  See Namay v. Contributory Retirement Appeal Bd., 19 Mass. App. Ct. 456, 464 (1985).  However, it must give adequate notice to the parties. In adjudicatory proceedings, "[p]arties shall have sufficient notice of the issues involved to afford them reasonable opportunity to prepare and present evidence and argument."

_____

testified that "the doctor looked into my knee," and that it was not a surgery.  Whether this was an exercise in semantics or obfuscation was a credibility question implicitly resolved favorably to Kalu by the magistrate, who credited her account of the progression of her symptoms.  CRAB cannot reject the magistrate's implicit credibility finding on the basis that Kalu withheld or failed to produce records when she did not.

G. L. c. 30A, § 11(1), inserted by St. 1954, c. 681, § 1.  See Namay v. Contributory Retirement Appeal Bd., supra at 461 (CRAB hearing is adjudicatory and "must be conducted in accordance with the requirements of G. L. c. 30A, §§ 10 and 11").  Contrast Yebba v. Contributory Retirement Appeal Bd., 406 Mass. 830, 837-838 (1990) (where "any denial . . . of the opportunity to litigate the . . . issue before CRAB was remedied by the subsequent opportunity to do so before the [Civil Service] [C]ommission").  Kalu produced all of the medical evidence required by PERAC and requested by the BRB, and provided sufficient evidence (i.e., the expert opinions of two doctors and the support of the medical panel) to demonstrate a prima facie case of causation.  If the BRB did not produce evidence of the rate of degeneration of the preexisting osteoarthritis sufficient to permit CRAB to make a determination, the appropriate remedy was to remand the case for supplementation of the record and further findings.  See Namay v. Contributory Retirement Appeal Bd., supra at 464.[15]

---

[15] Kalu had, in fact, met her burden of production.  She produced the reports of examining physicians who opined that the March, 2005, fall was the cause of her injury.  CRAB was not obligated to accept those opinions, see Lisbon v. Contributory Retirement Appeal Bd., 41 Mass. App. Ct. 246, 254 (1996), but Kalu did provide evidence "sufficient to form a reasonable basis" for a finding in her favor.  Brodin & Avery, Massachusetts Evidence § 3.2.1 (2016 ed.).  Once she did so, "the burden of production shift[ed] to the opponent" to produce evidence to the contrary.  Id. at § 3.2.2.

In addition, CRAB's finding that only one or two of the ten doctors had been aware of her "prior history" and that physicians who supported her application assumed that prior to the accident her osteoarthritis was "[a]symptomatic" is unsupported by the record.[16] As Dr. Shea noted, the scars from the previous arthroscopic procedure were plainly visible to any person who examined her, such as Dr. Oladipo, who performed the meniscectomy.[17] With the exception of two doctors, whose opinions CRAB understandably rejected,[18] the other fourteen medical professionals (including emergency room personnel) noted the previous history of osteoarthritis, and several discussed her use of medication both before and after the 2005 injury.[19] The fact of the previous arthroscopy was contained in Dr. Shea's

---

[16] In addition to emergency room personnel, Kalu was evaluated by twelve doctors -- Drs. Mason, Shea, Eslami, Troy, Oladipo, Mortimer, Fraser, Bulman, Chaglassian, and the members of the medical review panel, Drs. Galvin, Antkowiak, and Malloy -- as well as a physician's assistant and a physical therapist.

[17] Dr. Shea discovered the scars during his November 1, 2005, examination, and CRAB reasoned that "Dr. Oladipo, who performed her 2006 arthroscopy, must have noticed that she had prior surgery, but he does not mention it in his reports."

[18] Dr. Fraser and Dr. Chaglassian. The reports of these physicians stated she had no prior history.

[19] For example, Dr. Bulman noted that Kalu's arthritis symptoms were "tolerable" with Motrin before the accident, and that as of August of 2007 her medications were Motrin and Flexeril.

medical records that were provided to each of the three members of the medical review panel.

Finally, CRAB's declaration that it is "impossible to know" if any of the meniscus was removed in 1994 is not supported by substantial evidence. An MRI (magnetic resonance imaging) examination was performed in 2006 which showed the meniscus, and a meniscal tear. All of the medical professionals, including Dr. Shea, agreed that the 2005 injury caused the meniscal tear that interfered with the use of her knee, and rendered Kalu disabled for some period of time; they parted ways only as to the continued aggravation of the preexisting condition after the 2006 surgery to remedy the tear.

CRAB's ruling that Kalu had failed to produce records, or worse, its suggestion that she withheld them, was born of an error of law. Additionally, CRAB's related factual findings were, in part, unsupported by substantial evidence. Both errors inevitably permeated other aspects of its decision. While CRAB asserted other grounds for its decision, it is not clear that CRAB would have reached the same conclusions had it provided the parties with adequate notice, and if it had had a fuller factual record. For that reason, the appropriate remedy is not an award of benefits, but a remand for further consideration. See Morris v. Board of Registration in Med., 405 Mass. 103, 113-114 (1989); Namay v. Contributory Retirement Appeal Bd., 19 Mass. App. Ct.

at 464.  We address the additional grounds on which CRAB relied, for purposes of clarity on remand.

d.  <u>Fall in the parking lot</u>.  CRAB concluded that Kalu had "failed to meet her burden of proof" as to causation because none of the medical professionals had addressed the fact that she fell and hit her knee while being escorted to her car after falling at work.  CRAB stated that "[w]ith no details about this nearly contemporaneous injury to her right knee, Kalu has not proven that her fall at work was the proximate cause of the injuries she sustained that day."

Here, again, CRAB relied on a legal and evidentiary issue not previously raised or addressed before the DALA magistrate.  Neither party identified the incident in the parking lot as either the sole cause of the injury or an intervening cause which broke the chain of causation.  Those issues were not tried.  It was error for CRAB to deny benefits on that basis without permitting the parties an opportunity to address them.  See G. L. c. 30A, § 11(1); <u>Namay</u> v. <u>Contributory Retirement Appeal Bd</u>., <u>supra</u> at 461.

To be sure, the plaintiff retained the burden of persuasion at all times, but it was legal error for CRAB to conclude, as a matter of law, that the failure to anticipate issues not raised by the retirement board was a reason to deny her benefits.  "It would be improper for CRAB to require that the plaintiff

eliminate all other possible causes" of her injury.  Robinson v.
Contributory Retirement Appeal Bd., 20 Mass. App. Ct. 634, 641
(1985).

In addition, CRAB's analysis fails to clearly articulate
the legal foundation upon which it rests, thus frustrating
meaningful appellate review.  Cf. id. at 640-641.  CRAB has
cited no authority in support of its conclusion.  We understand
the underpinnings of its concern to be the rule of law explained
in Namvar v. Contributory Retirement Appeal Bd., 422 Mass. 1004,
1004-1005 (1996), and Richard v. Retirement Bd. of Worcester,
431 Mass. 163, 164 (2000), namely that the Legislature intended
to limit accidental disability retirement benefits to claimants
whose injuries result from the actual performance of their job
duties.  See, e.g., id. at 165 (travel to work is not
compensable; travel during work hours mandated by employer is
compensable).

Because the parties did not litigate the effect of the fall
against the car, there was no evidence, and neither DALA nor
CRAB made findings or rulings regarding, whether Kalu was in the
performance of her duties when the second incident occurred.
Compare Murphy v. Contributory Retirement Appeal Bd., 463 Mass.
at 346-352 (evidence insufficient to show judge received
threatening letter while in performance of his duties), with
Retirement Bd. of Salem v. Contributory Retirement Appeal Bd.,

453 Mass. 286, 290-291 (2009) (off-site heart attack caused by stressful conversation at work compensable), and Robinson v. Contributory Retirement Appeal Bd., 20 Mass. App. Ct. at 638. Even if the evidence were to show that Kalu was not performing her job duties at that time, the inquiry would not end there. If the second time she slipped and hit her knee was the foreseeable consequence of a previous on-the-job injury, the second incident would not necessarily break the chain of causation. See Retirement Bd. of Brookline v. Contributory Retirement Appeal Bd., 33 Mass. App. Ct. at 481-482. Hence, the bare fact of the second fall in one day does not provide a basis for denying benefits as a matter of law.[20]

e. Essential duties. CRAB concluded that Kalu had not proved that her essential duties as a teacher included "prolonged standing, use of stairs, or intervening in fights." CRAB thus rejected the explicit factual findings of the magistrate, and the testimony of Kalu, which the magistrate found credible, as well as the employer's certification that Kalu was unable to perform the essential functions of her job with reasonable accommodation. CRAB relied, in part, on the job

---

[20] The absence of additional evidence concerning the fall against the car is not proof that this incident was the cause of her condition. See, e.g., Kunkel v. Alger, 10 Mass. App. Ct. 76, 86 (1980) ("It is settled that mere disbelief of testimony does not constitute evidence to the contrary").

description provided by the Boston Public Schools, which contained no physical requirements for the job.

Under the applicable PERAC regulations, "[t]he determination of what constitutes an essential duty of a job or position is to be made by the employer, based on all relevant facts and circumstances and after consideration of a number of factors."  840 Code Mass. Regs. § 10.20 (2004).[21]  The employer's determination of essential functions is not controlling, however, and is subject to administrative review by DALA and CRAB.  See McLaughlin v. Lowell, 84 Mass. App. Ct. 45, 69 & n.28 (2013).  In this case, the Boston Public Schools filled out the questionnaire required by the regulations, certified that Kalu was unable to perform the essential functions of the job, and certified that there was no reasonable accommodation to be made. See 840 Code Mass. Regs. § 10.07 (1998).  The certification was conclusory, however, in that it did not list what the physical requirements of the job were, did not explain the factors considered, and did not explain why accommodation to a person with some mobility issues was not feasible.[22]

---

[21] See now 840 Code Mass. Regs. § 10.21 (2016).

[22] The PERAC regulations require the employer to provide information on a number of factors:

"In making the determination as to whether a function or duty is essential, the employer shall consider and provide documentation to include, but not be limited to:  (a) The

We take no issue with CRAB's effort to find out what degree of mobility was truly an essential function of the job. The issue is a consequential one, with potential ramifications for other teachers. Rather than seek additional information, however, CRAB filled the gap with assertions that were unsupported by the record. For example, CRAB opined that "there is no reason why Kalu could not alternate standing and sitting for instruction and conferencing," that improved classroom management would alleviate her problems, and that "she did not provide any evidence that she, rather than her aide, was required to physically intervene" in fights between students. CRAB also speculated that an aide could escort her students to other activities, and that accommodations were available, based on the record in a particular case before the Massachusetts

---

nature of the employer's operation and the organizational structure of the employer; (b) Current written job descriptions; (c) Whether the employer requires all employees in a particular position to be prepared to perform a specific duty; (d) The number of employees available, if any, among whom the performance of the job function can be distributed; (e) The amount of time that employees spend performing the function; (f) Whether the function is so highly specialized that the person in the position was hired for his or her special ability to perform the function; (g) The consequences of not requiring the employee to perform the function; (h) The actual experience of those persons who hold and have held the position or similar position; and (i) Collective bargaining agreements."

840 Code Mass. Regs. § 10.20 (2004). (See now 840 Code Mass. Regs. § 10.21 [2016].)

Commission Against Discrimination, but not a part of the record in this case.[23] These factual findings were made without evidence bearing on the factors enumerated in the regulations, curriculum requirements, accepted pedagogy, student needs or behavior, staffing, school policy, history of accommodation, or contractual obligations. "[CRAB] exceeded its proper role in announcing, with no . . . evidence in the record to support it," that it departed from the magistrate's factual findings. Morris v. Board of Registration in Med., 405 Mass. at 113. The information on which findings are made "should be disclosed on the administrative record." Ibid.

3. Conclusion. The question still remains whether Kalu's injury resulted in a permanent condition that rendered her incapable of performing the essential functions of her job, and was the result of the aggravation of a preexisting condition of

---

[23] We express no opinion on CRAB's apparent assumption that the burden of proof regarding the lack of suitable accommodation rests with Kalu. This case is unlike those arising under G. L. c. 151B, § 4, where the employee claims that she is not disabled. In those cases, the plaintiff carries the initial burden of showing that she can perform the essential functions of her job with or without reasonable accommodation. See Labonte v. Hutchins & Wheeler, 424 Mass. 813, 822 (1997). In disability retirement cases, the Supreme Judicial Court has held that the essential duties of a job must be determined after an employer has been given a reasonable opportunity to accommodate an employee seeking disability retirement benefits. See Foresta v. Contributory Retirement Appeal Bd., 453 Mass. 669, 680 (2009). The disability retirement cases have not squarely addressed the burden of proof, and the PERAC regulations regarding initial eligibility are silent as to burden of proof.

osteoarthritis, or whether the injury to her knee was resolved by surgery and any remaining disability was the result of the natural progression of the preexisting condition.  In answering this question, CRAB properly considered evidence in the record,[24] but erred as a matter of law by deciding questions not litigated before DALA without providing the parties with notice and an opportunity to present evidence.  CRAB also made factual findings without record support.  On remand, CRAB may, in its discretion, limit the issues under consideration to those raised before DALA and decide the case based on the present record, or it may recommit the case to DALA for the taking of additional evidence.  The judgment of the Superior Court is vacated with instructions to remand the case to CRAB for further proceedings consistent with this opinion.

So ordered.

---

[24] For example, Dr. Shea opined that Kalu recovered fully from the injury of March, 2005, and the physical therapist said that she had a full range of motion.